UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. TIMOTHY C. STANCEU, JUDGE

_____

|  |  |  |
|---|---|---|
| | : | |
| MAGID GLOVE & SAFETY | : | |
| MANUFACTURING CO. LLC, | : | |
| | : | |
| Plaintiff, | : | Court No. 16-00150 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____ :

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Pursuant to Rule 56.3 of the Rules of the United States Court of International Trade, defendant, the United States (the Government), responds to Plaintiff's Statement of Material Facts As To Which There Is No Genuine To Be Tried, as follows:

1.  Objection.  This paragraph states a conclusion of law.

2.  Admits.

3.  Admits.

4.  Admits.

5.  Admits.

6.  Admits.

7.  Admits.

8.  Denies.  *See* Pl.'s Ex. D.  Avers that the website descriptions provide the American National Standards Institute classifications or levels for abrasion resistance.  Avers that several descriptions also provide the ANSI classifications or levels for cut and puncture resistance.  *Id.*

9.  Denies the specified ANSI cut, ANSI abrasion, and ANSI/EN Puncture "ratings" for Style No. GP546.  *See* Pl.'s Exhibits A and D.

10. Admits.

11. Admits.

12. Admits.

13. Admits.

14. Admits.

15. Denies.  *See* Samples.  Avers that the polyurethane is on the palms of the gloves, a portion of the palmside knit wrist, and overlaps the backsides of the fingertips, and the sides of the finger.  *See* Samples.

16. Denies.  *See* Samples.  Avers that the polyurethane does not seep into the entirety of the inside of the glove.  There are portions of the inside of the palmside of glove where the polyurethane is not visible or barely visible.  *See* Samples.

17. Denies.  *See* Samples.  Avers that the gloves are not "enveloped" in plastic.  The polyurethane is only on the palms of the gloves, a portion of the palmside knit wrist, and overlaps the backsides of the fingertips, and the sides of the finger.  *See* Samples.

18. Denies.  *See* Samples.  Avers that the gloves are not "encircled" in plastic.  *See* Samples. The polyurethane is only on the palms of the gloves, a portion of the palmside knit wrist, and overlaps the backsides of the fingertips, and the sides of the finger.  *See* Samples.

19. Denies.  *See* Pl.'s Ex. D.  Avers that the knit shells provide abrasion resistance.  *See* Ex. D, BP-169 Website Description stating "Magid ROC BP169 fitted gloves feature a black polyurethane coated palm on a 100% black polyester seamless machine knit shell to provide outstanding grip and superior abrasion resistance."  *See* Pl's Ex. D, GPD590 Website Description "The D-ROC GPD590 Glove's cut protection, abrasion resistance and dexterity is further supported by a grey polyurethane palm coating  . . . ."  *See* Ex. D, GP150-Website Description "The ROC GP150 Glove's nylon shell is also tough providing good abrasion resistance and ANSI Cut Level 1 protection."  *Id*.

20. Denies that the cited portion of the Transcript of the Deposition of Gary Cohen (Cohen Dep. Tr.) supports this statement.  Avers that plaintiff did not conduct any studies to determine the dexterity provided by the polyurethane.  Cohen Dep. Tr. 35:2-8.

21. Admits that the cited portion of the Cohen Deposition Transcript supports this statement. Denies the factual assertion in this statement.  Cohen Dep. Tr. 34:5-15.
    Avers that plaintiff did not conduct any tests to determine the amount of grip that the

polyurethane provides.  Cohen Dep. Tr. 34:5-15.

22. Admits, but the knit shell of the glove protects the wearer's hand from abrasion, and cuts and lacerations.  *See* Pl's Ex. D, BP-169 Website Description stating "Magid ROC BP169 fitted gloves feature a black polyurethane coated palm on a 100% black polyester seamless machine knit shell to provide outstanding grip and superior abrasion resistance."

23. Admits.

                                      Respectfully submitted,

                                      BRIAN M. BOYNTON
                                      Acting Assistant Attorney General

                                      JEANNE E. DAVIDSON
                                      Director

By:     /s/ Justin R. Miller
                                      JUSTIN R.  MILLER
                                      Attorney-in-Charge
                                      International Trade Field Office

                                      /s/ Aimee Lee
                                      AIMEE LEE
                                      Assistant Director

                                      /s/ Marcella Powell
                                      MARCELLA POWELL
                                      Senior Trial Counsel
                                      International Trade Field Office
                                      Department of Justice, Civil Division
                                      Commercial Litigation Branch
                                      26 Federal Plaza, Room 346
                                      New York, New York 10278
                                      Attorney for Defendant

Dated: June 14, 2021                     Tel:  (212) 264-1873

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. TIMOTHY C. STANCEU, JUDGE

_____
                                        :
MAGID GLOVE & SAFETY                    :
MANUFACTURING CO. LLC,                  :
                                        :
                    Plaintiff,          :        Court No. 16-00150
                                        :
              v.                        :
                                        :
UNITED STATES,                          :
                                        :
                    Defendant.          :
_____:

### DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Rule 56.3, Rules of the United States Court of International Trade, requires that motions for summary judgment include a separate statement of disputed material facts as to which it is contended that there exists no genuine issue to be tried.  In this case, with respect to Defendant's Cross Motion for Summary Judgment only, there are no disputed material facts as to which there exists a genuine issue to be tried and the issues are amenable to resolution through dispositive motions.  The pertinent undisputed facts of this case are as follows:

1.    The shell is the knitted portion of the glove.  *See* Ex. 1, Transcript of the Deposition of Gary Cohen (Cohen Dep. Tr.) at 13:6-21.

2.    The gloves at issue are knitted.  *See* Ex. 1, Cohen Dep. Tr. 11:18-13:5. *See* Samples.

3.    The entire knit shell of the glove is not coated with polyurethane.  *See* Samples.

4.      "[T]he coating itself doesn't have cut resistance."  *See* Def.'s Ex. 1, Cohen
Dep. Tr. at 58:24-59:8.

5.      The gloves' knit shell covers the hand and wrist.  *See* Samples.

6.      The gloves' knit shell has separate sections for each of the fingers and the
thumb.  *See* Samples.

7.      The gloves' knit shell provides cut-resistance.  *See* Pl.'s Exs. A and D.

8.      The gloves' knit shell provides breathability.  *See* Pl.'s Exs. A and D.

9.      The gloves' knit shell provides comfort.  *See* Pl.'s Exs. A and D.

10.     The gloves' knit shell provides dexterity.  *See* Pl.'s Exs. A and D; *see*
samples.

11.     The gloves' knit shell provides abrasion resistance.  *See* Pl.'s Ex. A and D.

12.     The gloves' knit shell provides the medium on which the polyurethane is
applied.  *See* Def.'s Ex. 3, No. 20, Pl.'s Resp. to Def.'s First Set of Interrogatories.  *See*
Samples.

13.     By weight, the textile portion of the gloves is over 50% of the total weight
of the gloves.  *See* Pl.'s Ex. 6 to Exhibit C and Samples.

14.     Model Nos. GPD546, GPD590, and PF540 are made with High
Performance Polyethylene (HPPE).  *See* Ex. Pl.'s Ex. A and D.

15.     HPPE is "15x stronger than steel."  *See* Pl.'s Ex. G.

16.     HPPE is "resistant to chemicals, water, and ultra-violet light."  *See* Pl.'s
Ex. G.

17.     HPPE is "low-linting."  *See* Pl.'s Ex. G.

18.     HPPE's "soft material offers superior comfort."  *See* Pl.'s Ex. G.

19.     Model No. GPD590 also has glass fiber in its shell.  *See* Def.'s Ex. A,

Cohen Dep. Tr. 14:18-16:1.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

By:     /s/ Justin R. Miller
        JUSTIN R.  MILLER
        Attorney-in-Charge
        International Trade Field Office


        /s/ Aimee Lee
        AIMEE LEE
        Assistant Director

        /s/ Marcella Powell
        MARCELLA POWELL
        Senior Trial Counsel
        International Trade Field Office
        Department of Justice, Civil Division
        Commercial Litigation Branch
        26 Federal Plaza, Room 346
        New York, New York 10278
        Attorney for Defendant
Dated: June 14, 2021            Tel:  (212) 264-1873

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. TIMOTHY C. STANCEU, JUDGE
_____
                                                     :

MAGID GLOVE & SAFETY              :
MANUFACTURING CO. LLC,       :
                                                     :
                      Plaintiff,        :               Court No. 16-00150
                                                   :
                       v.                  :
                                                 :
UNITED STATES,                   :
                                                 :
                      Defendant.     :
_____:

### <u>ORDER</u>

      Upon consideration of defendant's cross motion for summary judgment, plaintiff's motion for summary judgment, other papers on file, and upon due deliberation; it is hereby

      **ORDERED** that defendant's cross motion be and hereby is granted; and it is further

      **ORDERED** that plaintiff's motion for summary judgment be and hereby is denied; and it is further

      **ORDERED** that this action is dismissed.


                                        _____
                                             JUDGE

Dated: _____
      New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. TIMOTHY C. STANCEU, JUDGE

————————————————————————

|  |  |  |
|---|---|---|
| MAGID GLOVE & SAFETY | : | |
| MANUFACTURING CO. LLC, | : | |
| | : | |
| Plaintiff, | : | Court No. 16-00150 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

————————————————————————

## **DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of International Trade,

defendant, the United States, respectfully moves this Court for an Order in this action:  (1)

granting our cross motion for summary judgment; (2) finding that the merchandise at issue is

classifiable in subheading 6116.10.55, Harmonized Tariff Schedule of the United States

(HTSUS); (3) denying plaintiff's motion for summary judgment; and (4) dismissing this action.

The basis for defendant's cross motion for summary judgment is set forth in the attached memorandum.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

By:     /s/ Aimee Lee
        AIMEE LEE
        Assistant Director

        /s/ Marcella Powell
        MARCELLA POWELL
Of Counsel:                              Senior Trial Counsel
Paula Smith                              Civil Division, U.S. Dept. of Justice
Office of the Assistant Chief Counsel    Commercial Litigation Branch
International Trade Litigation            26 Federal Plaza, Room 346
U.S. Customs and Border Protection       New York, New York 10278
                                         Tel. (212) 264-9230 or 9236
June 14, 2021                            Attorneys for Defendant

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. TIMOTHY C. STANCEU, JUDGE

_____
                                  :

MAGID GLOVE & SAFETY         :
MANUFACTURING CO. LLC,     :
                                    :
                Plaintiff,         :          Court No. 16-00150
                                    :
            v.                     :
                                    :
UNITED STATES,                 :
                                    :
                Defendant.      :
_____ :

---

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

MARCELLA POWELL
Of Counsel:                        Senior Trial Counsel
Paula Smith                      Civil Division, U.S. Dept. of Justice
Office of the Assistant Chief Counsel   Commercial Litigation Branch
International Trade Litigation         26 Federal Plaza, Room 346
U.S. Customs and Border Protection    New York, New York 10278
                                     Tel. (212) 264-9230 or 9236
Dated: June 14, 2021            Attorneys for Defendant

# **TABLE OF CONTENTS**

RELEVANT STATUTORY PROVISIONS AND EXPLANATORY NOTES ................1

QUESTIONS PRESENTED ................................................................2

INTRODUCTION ........................................................................2

   A.  Merchandise At Issue/Administrative History ........................................2

SUMMARY OF THE ARGUMENT ...................................................4

ARGUMENT ..............................................................................5

   I.      STANDARD OF REVIEW ....................................................5

   II.     THE STATUTORY FRAMEWORK ........................................6

   III.    GRI 1 LEADS TO CLASSIFICATION UNDER HEADING 6116, HTSUS ..7

       A.  The Terms of the Headings Are Dispositive .................................7

       B.  Consideration of the Composition of the Gloves Still Leads to
           Classification Under Heading 6116 ..........................................14

   IV.    GRI 2(b) IS INAPPLICABLE TO THE CLASSIFICATION OF THE
        GLOVES AT ISSUE ........................................................12

   V.      GRI 3(a) AND (b) ARE INAPPLICABLE TO THE CLASSIFICATION OF
        THE GLOVES AT ISSUE ..................................................14

   VI.    IF THE ESSENTIAL CHARACTER OF THE GLOVES AT ISSUE
        CANNOT BE DETERMINED, THEN PURSUANT TO GRI 3(c), THE
        MERCHANDISE IS CLASSIFIABLE IN HEADING 6116, HTSUS ..........25

   VII.  CBP's ADMINISTRATIVE RULING, HQ H220278, IS ENTITLED TO
        *SKIDMORE* DEFERENCE ..................................................20

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*3G Mermet Fabric Corp. v. United States*,
  135 F. Supp. 2d 151 (Ct. Int'l Trade 2001) ...................................................22

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970).........................................................................................5

*A.N. Deringer, Inc. v. United States*,
  66 Cust. Ct. 378 (1971)...................................................................................22

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)......................................................................................5, 6

*Avenues in Leather, Inc. v. United States*,
  423 F.3d 1326 (Fed. Cir. 2005).........................................................................6

*BASF Corp. v. United States*,
  482 F.3d 1324 (Fed. Cir. 2007).........................................................................6

*Better Home Plastics Corp. v. United States*,
  916 F. Supp. 1265 (Ct. Int'l Trade 1996), *aff'd*, 119 F.3d 969 (Fed. Cir. 1997)...........22

*Brooks Brothers v. United States*,
  68 Cust. Ct. 91 (1972).....................................................................................14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).........................................................................................5

*Home Depot U.S.A., Inc. v. United States*,
  427 F. Supp. 2d 1278 (Ct. Int'l Trade 2006), *aff'd*, 491 F.3d 1334 (Fed. Cir. 2007)....21

  491 F.3d 1334 (Fed. Cir. 2007).........................................................................6

*Kalle USA, Inc. v. United States*,
  273 F. Supp. 3d 1319 (Ct. Int'l Trade 2017) .....................................................6

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).........................................................................................5

*Mead Corp. v. United States*,
  283 F.3d 1342 (Fed. Cir. 2002).......................................................................20

*Mita Copystar America v. United States*,
  21 F.3d 1079 (Fed. Cir. 1994)......................................................................6, 7

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944)...........................................................................................20

*Sweats Fashion, Inc. v. Pannil Knitting Co.*,
   833 F.2d 1560 (Fed. Cir. 1987)..........................................................................6

*Telebrands Corp. v. United States*,
   36 CIT 1231, 865 F. Supp. 2d 1277, *aff'd*, 522 Fed. Appx. 915 (Fed. Cir. 2013) ..........6

*United States v. Mead Corp.*,
   522 U.S. 218 (2001)...........................................................................................20

*United States v. Pan Pac. Textile Group Inc.*,
   276 F. Supp. 2d 1316 (2003) .............................................................................5

*Wagner Spray Tech Corp. v. United States*,
   31 C.I.T. 676 (2007) .........................................................................................21

## U.S.C.I.T. Rules

U.S.C.I.T. Rule 30(b)(6) ...................................................................................22

U.S.C.I.T. Rule 56 ............................................................................................5

U.S.C.I.T. Rule 56(c) ........................................................................................5

## Harmonized Tariff Schedule of the United States

General Rule of Interpretation 1 ................................................................4, 6, 7

General Rule of Interpretation 2(b)...........................................................4, 5

*Explanatory Note (X)* to GRI 2(b) ...................................................................13

*Explanatory Note (XI)* to GRI 2(b) ..................................................................13

*Explanatory Note (XII)* to GRI 2(b)................................................................14

General Rule of Interpretation 3 .......................................................................5

General Rule of Interpretation 3(a)...........................................................14, 15

General Rule of Interpretation 3(b)...................................................................4

Explanatory Notes to General Rule of Interpretation 3(b)................................16

*Explanatory Note (VII)* to GRI 3(b) ............................................................................16

General Rule of Interpretation 3(c) ...........................................................................20

Chapter 39 ................................................................................................... passim

Note 1 of Chapter 39 .................................................................................10, 12, 17

Note 2(p) of Chapter 39 .............................................................................10, 13, 15

Explanatory Notes to Chapter 39 ..............................................................................10

Heading 3926 ................................................................................................4, 5, 7

Explanatory Notes to Heading 3926 ..........................................................................10

Section XI ................................................................................................... passim

Note 1(h) to Section XI ...........................................................................................9, 10

Note 3 to Chapter 56 ...............................................................................................14, 15

Note 2 to Chapter 59 ..............................................................................10, 11, 12

Heading 5903 .......................................................................................................11, 12

Heading 6116 ...................................................................................................4, 5, 7, 9

    Subheading 6116.10.............................................................................................17

    Subheading 6116.10.55.....................................................................................1, 3, 4

## **Other Authorities**

HQ H220278 .........................................................................................................20, 21

New York Ruling Letter N013115 ............................................................................20

New York Ruling Letter N042821 ............................................................................20

*The Modern Textile Dictionary* (1963) .........................................................................8

www.magidglove.com/safety-matters/choosing-and-using-ppe/
    cut-resistant-glove-technology...........................................................................2, 3

www.merriam-webster.com/dictionary/glove .................................................................22

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. TIMOTHY C. STANCEU, JUDGE

_____

|  |  |  |
|---|---|---|
| MAGID GLOVE & SAFETY MANUFACTURING CO. LLC, | : | |
| | : | |
| Plaintiff, | : | Court No. 16-00150 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND IN SUPPORT OF
DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States (the Government), submits this memorandum in opposition to plaintiff's motion for summary judgment and in support of its cross motion for summary judgment.  For the reasons set forth below, we respectfully request that the Court enter an Order: (1) granting our cross motion for summary judgment; (2) finding that the merchandise at issue is classifiable in subheading 6116.10.55, Harmonized Tariff Schedule of the United States (HTSUS); (3) denying plaintiff's motion for summary judgment; and (4) dismissing this action in its entirety.

**RELEVANT STATUTORY PROVISIONS AND EXPLANATORY NOTES**

The relevant statutory provisions and their corresponding Explanatory Notes are contained in Addendum A to this memorandum.[1]

_____

[1] All references to the HTSUS and Explanatory Notes are to the versions that were in effect on January 4, 2015.

**QUESTIONS PRESENTED**

Whether the imported knitted gloves are properly classifiable under heading 3926, HTSUS, as other articles of plastics, or heading 6116, HTSUS, as knitted gloves.

**INTRODUCTION**

A.   **Merchandise At Issue/Administrative History**

This case involves the proper tariff classification of eight models of knit textile gloves. The specific models of gloves at issue are Nos. PU50, BP169, GP150, GDP590-2N, PF540-2N, SWGPD590-2N, GPD546-2N, and SWGPD546-2N.  The glove styles are used in various industries such as automotive manufacturing and material handling.  *See* Pl.'s Ex. A.

The knit shell of the gloves is comprised solely of man-made textiles.  Specifically, model Nos. PU50 and GP150 are comprised of nylon; model no. BP169 is comprised of 100% polyester; model nos. GDP590-2N and SWGPD590-2N are comprised of a combination of High Performance Polyethylene (HPPE) (with glass fibers) and synthetic fibers; model no. PF540-2N is comprised of HPPE and Spandex; model Nos. GPD546-2N and SWGPD 546-2N are comprised of a combination of HPPE, Lycra, and polyester yarn.  *See* Pl.'s Ex. A.  All of the gloves are partially coated with polyurethane.  *See* Samples.  The knit wrist of the gloves and the back of the gloves are not coated with polyurethane.  *See* Samples.  By weight, the gloves are comprised of more than 50% of textile material.  *See* Def.'s Ex. 3.  *See also* Samples.

The knit shell of the gloves provides the structure of the gloves and protects the wearer from cuts and lacerations.  According to Magid, the yarn used to make the knit shells is specially engineered to allow the gloves to achieve higher cut resistance.  Magid's website states:

WHAT MAKES A GLOVE CUT-RESISTANT

Cut-resistant gloves and sleeves are an essential part of most safety programs. But how do you <u>choose the right gloves for extreme cut hazards</u> and how exactly does

2

a knit glove protect your workers from cuts and lacerations? The answer**? It's all in the yarn!**

https://www.magidglove.com/safety-matters/choosing-and-using-ppe/cut-resistant-glove-technology (last visited on June 7, 2021) (emphasis added).

*See* Def.'s Ex. 2.

The shell is "inherently" designed to have the ability to protect the wearer from cuts. *See* Def.'s Ex. 1, Transcript of Deposition of Gary Cohen (Cohen Dep. Tr.) 14:18-16:1. **Several models of the gloves at issue have knit shells comprised of** yarn that is constructed with an inner core of High Performance Polyethylene (HPPE). *Id.*; *see also* Pl.'s Ex. A. Additionally, the knit shells of several of the models of gloves at issue are comprised of HPPE that contains glass fiber. *Id.* The glass fiber imparts properties that allow the gloves to achieve a higher cut resistance. *See* Def.'s Ex. 1, Cohen Dep. Tr. 14:18-16:1.

The knit shells provide comfort and breathability, and several knit shells are washable which extends the service life of the gloves. *See* Pl.'s Ex. A. For example, the product description for model no. PU50 states that the "stretch nylon shell is comfortable, breathable with excellent tactile sensitivity." *Id.* The product description for model no. GP150 states that the gloves' "nylon shell is also tough providing good abrasion resistance and ANSI Cut Level I protection." *Id.*

The gloves shells are dipped into polyurethane. *See* Def.'s Ex. 1, Cohen Dep. Gr. at 11:18-13:5. The composition of the knit shells govern the amount of polyurethane that is absorbed by the palm side of the gloves. *Id.* at 16:2-6; 13;22-14:9. The polyurethane coatings on the palms of the gloves enhance or add to the flexibility, dexterity and grip provided by the knit shells. "[T]he coating itself doesn't have cut resistance." *See* Def.'s Ex. 1, Cohen Dep. Tr. at 58:24-59:8.

3

CBP classified the gloves upon liquidation under subheading 6116.10.55 of the Harmonized Tariff Schedule of the United States (HTSUS), at a duty rate of 13.2% *ad valorem*. That provision covers:

6116:   Gloves, mittens and mitts, knitted or crocheted:

6116.10:          Impregnated, coated or covered with plastics or rubber:

                    Other:

                              Without fourchettes:[2]

                                        Other:

6116.10.55:                              Containing 50 percent or more by weight of cotton, man-made fibers or other textile fibers, or any combination thereof . . . .

Magid asserts that the gloves are classifiable under subheading 3926.20.10, HTSUS, which covers:

3926:   Other articles of plastics and articles of other materials of headings 3901 to 3914:

3926.20:          Articles of apparel and clothing accessories (including gloves, mittens and mitts):

3926.20.10:                    Seamless . . .

Subheading 3926.20.10 carries a duty-free rate.

<u>**SUMMARY OF THE ARGUMENT**</u>

Summary judgment for the Government is warranted.  The classification of the gloves can be achieved through GRI 1.  Heading 6116, HTSUS, covers "Gloves, mittens, and mitts, knitted or crocheted."  The heading is not limited by material or substance and, thus, is sufficiently broad to cover the glove as a whole.  Moreover, if the gloves are classified according

---

[2]   A fourchette is "[a] glove term which pertains to the forked pieces or the walls of fabric which form the inside portions of the glove finger."  *The Modern Textile Dictionary* (1963).

to the composition of the fabric, they are still properly classifiable in heading 6116, HTSUS, because they are not completely embedded in plastics or entirely coated or covered on both sides with plastic.

Magid fails to explain why the terms of heading 6116, HTSUS, do not cover the gloves at issue or why classification is not otherwise determined under GRI 1.  Instead, Magid erroneously skips GRI 1, and initially argues that the classification of the gloves at issue is governed by GRI 2(b) and 3(b).  Specifically, Magid argues that the gloves are *prima facie* classifiable in both headings 3926 and 6116, HTSUS.  According to Magid, GRI 2(b) "provides the proper means of analyzing products, including these gloves, that are composed of two or more materials" and that GRI 2(b) directs that the "classification of the gloves must be pursuant to GRI 3."  *Id.* at 12.  Magid's application of the GRIs and analysis of the scope of headings 3926 and 6116 is incorrect.

## ARGUMENT

## I.   STANDARD OF REVIEW

Under Rule 56 of the United States Court of International Trade, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In determining whether a genuine issue of fact exists, the court reviews the evidence submitted, drawing all inferences against the moving party.  *See United States v. Pan Pac. Textile Group Inc.*, 276 F. Supp. 2d 1316, 1319 (2003); *see also Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant bears the burden of demonstrating that there exists no genuine

issue of material fact that would warrant a trial.  *See, e.g., Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 157 (1970).  The movant may satisfy this burden by noting that the party who will

bear the ultimate burden of proof at trial cannot support an essential element of its claim.

*See, e.g., Celotex*, 477 U.S. at 322-23.

Here, there are no genuine materials issues of fact regarding the physical characteristics,

use, function, and purpose of the imported knit gloves.  Therefore, this action involves only

questions of law and is ripe for summary judgment.  *See, e.g., Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-248 (1986); *Celotex,* 477 U.S. at 325-328; *Sweats Fashion, Inc. v. Pannill*

*Knitting Co.*, 833 F.2d 1560, 1562-63 (Fed. Cir. 1987).

## II.     THE STATUTORY FRAMEWORK

In construing the HTSUS, the Court is bound to apply the General Rules of Interpretation

(GRIs), which must be applied in numerical order.  *BASF Corp. v. United States*, 482 F.3d 1324,

1326 (Fed. Cir. 2007).  GRI 1 provides that "classification shall be determined according to the

terms of the headings and any relative section or chapter notes."  The HTSUS section and

chapter notes "are not optional interpretive rules," but instead have the force of statutory law.

*Avenues in Leather, Inc. v. United States*, 423 F.3d 1326, 1333 (Fed. Cir. 2005).  The HTSUS is

designed so that most classification questions can be answered by GRI 1."  *Telebrands Corp. v.*

*United States*, 36 CIT 1231, 1236, 865 F. Supp. 2d 1277, 1280 (2012), *aff'd*, 522 Fed. Appx. 915

(Fed. Cir. 2013). "What is clear from the legislative history of the World Customs Organization

and case law is that GRI 1 is paramount . . . The HTSUS is designed so that most classification

questions can be answered by GRI 1, so that there would be no need to delve into the less precise

inquiries …." *Id*.  Pursuant to GRI 1, the language of the HTSUS headings are paramount.

Courts may look to the Explanatory Notes (ENs) to the Harmonized Commodity Description and Coding System, maintained by the World Customs Organization, as persuasive authority on how to interpret and apply HTSUS provisions.  *See Home Depot U.S.A., Inc. v*. 491 F.3d 1334, 1336 (Fed. Cir. 2007).  "[A]lthough the Explanatory Notes 'do not constitute controlling legislative history,' they serve a critical function as an interpretative supplement to the HTSUS, and 'are intended to clarify the scope of HTSUS [provisions,] and to offer guidance in interpreting [those provisions].'"  *See Ciba Vision Corp. v. United States,* 36 CIT 1256 n.12 (2012) *(citing Mita Copystar America v. United States,* 21 F.3d 1079, 1082 (Fed. Cir.1994)).

In this action, GRI 1 resolves the classification of the knit gloves at issue and, therefore, it is not necessary to resort to the remaining GRIs.  The plain language of headings 3926 and 6116, and confirmed by the relevant chapter notes, section notes, and Explanatory Notes establish that the gloves are properly classifiable under heading 6116, HTSUS.

## III.   GRI 1 LEADS TO CLASSIFICATION UNDER HEADING 6116, HTSUS

### A.  The Terms of the Headings Are Dispositive

GRI 1 states that "classification shall be determined according to the terms of the headings and any relative section or chapter notes …"  Thus the first step in the classification analysis is the language of the headings.  *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1367 (Fed. Cir. 2013).  Here, the two HTSUS headings at issue are:

> 6116:   Gloves, mittens and mitts, knitted or crocheted:

> 3926:   Other articles of plastics and articles of other materials of headings 3901 to 3914:

There is no question that the articles at issue constitute "gloves … knitted" and the heading is not limited to gloves that are knitted from any specific material.  Thus, the knitted gloves in their entirety are plainly described by the terms of heading 6116.

The next part of GRI 1 requires consideration of "any relative section or chapter notes." Section XI and Note 1(h) cover heading 6116 and explicitly provides that the section "**does not cover**: ... [w]oven, knitted, or crocheted fabrics, felt or nonwovens, impregnated, coated, covered or laminated with plastics, or **articles** thereof, **of chapter 39**."  (Emphasis added).  Moreover, Note 2(p) of Chapter 39 covering heading 3926 states that **"[g]oods of section XI** (textiles and textile articles)" **are excluded** from the scope of Chapter 39."  (Emphasis added).  Accordingly, the headings are mutually exclusive, and the knitted gloves do not fall within Magid's claimed heading 3926 of Chapter 39.

Magid, however, advances a different analysis that fails to take into account the application of GRI 1.  Magid states that "each Heading references a material or substance— knitted or crocheted textiles of 6116 and plastics of 3926 – and must be taken to include a refence [sic] to combinations of that material with other materials." Pl.'s Br. at 12.  Magid is incorrect.  Although Magid's claimed heading 3926 makes reference to "other articles of plastic," heading 6116 makes no reference to a material or substance.  Heading 6116 encompasses "Gloves, mittens and mitts, knitted or crocheted" regardless of what material or substance they are made from.[3]

---

[3] Gloves, mittens and mitts, knitted or crocheted, "impregnated, coated or covered with plastics of rubber" only appears at the subheading level, which is not controlling in a GRI 1 heading comparison.  Nonetheless the language appearing at the subheading confirms that knitted gloves that are "impregnated, coated or covered with plastics" are *prima facie* included in their entirety in Heading 6116 without resort to GRI 2 and 3.

Here, Magid's imported merchandise is knit gloves which are only coated with plastic on the palms and one side of the fingers.  The terms of heading 6116 describe Magid's knit gloves, while heading 3926 "other articles of plastic" does not on its face.  Heading 3926 is by far a less specific basket provision and less descriptive than heading 6116 with its *eo nomine* reference to gloves.  Accordingly, GRI 1 resolves the classification of the imported knitted gloves under heading 6116 without the need to resort to any of the other GRIs.

### B.  Consideration of the Composition of the Gloves Still Leads to Classification Under Heading 6116, HTSUS

Additionally, classification under GRI 1 involves consulting the pertinent Section and Chapter Notes.  As noted above, heading 6116 is limited by Note 1(h) to Section XI and "does not cover: ... [w]oven, knitted, or crocheted fabrics…impregnated, coated, covered or laminated with plastics, or articles thereof, of chapter 39."  Thus, if Magid's knitted gloves were covered by a provision of Chapter 39 "plastics and articles thereof," then the gloves would not fall within heading 6116.

Instead of looking to its own claimed provision under heading 3926 for correct classification, Magid relies on the language of Note 1(h) to argue that "gloves that are articles of knit fabric that are impregnated, coated, covered or laminated with plastics cannot be classified in Section XI.  Instead such gloves must be classified in Chapter 39."  Pl. Br. at 16.  Plaintiff's analysis is flawed.  Section Note 1(h) does not direct that Magid's gloves must fall within a provision of Chapter 39; it merely excludes gloves that are classified in Chapter 39 in the first instance.  *Kalle USA v. United States*, 273 F. Supp. 3d 1319, 1332 (Ct. Int'l Trade 2017) *aff'd* 923 F.3d 991 (2019) ("Thus, a product which is not classifiable under Chapter 39 would not be excluded from Section XI under Note 1(h))".  Instead, the Note limits the reach of the headings of Section XI excluding knitted articles impregnated, coated, covered or laminated with plastic,

but does not dictate that such articles are classified within Chapter 39. Advancing its incorrect analysis, Magid discusses how its gloves might satisfy the "impregnated, coated or covered… with plastics" language of the Note. Pl.'s Br. at 16-18. It is not enough to seek to define these terms; rather Magid must prove that its gloves satisfy the terms of its claimed provision. Namely, that the knit gloves are "other articles of plastics" of heading 3926 and once that is established, that its gloves are "articles of apparel and clothing accessories (including gloves, mittens and mitts): Seamless" of subheading 3926.20.10, HTSUS.

However, Magid has not demonstrated that its textile knit gloves coated only partially with plastic, are correctly classified as an "other articles of plastic" under heading 3926. Chapter 39, Note 1 provides in relevant part:

> [t]he expression [plastics], however, does not apply to materials regarded as textile materials of section XI.

Chapter 39, Note 2(p) states:

> This chapter does not cover:

> (p) Goods of section XI (textiles and textile articles).

The Explanatory Note to heading 3926, HTSUS states that:

> [t]his heading covers articles, not elsewhere specified or included, of plastics (as defined in Note 1 to the Chapter) or of other materials of headings 39.01 to 39.14.

Because Magid's gloves are made from knit textile, are textile articles, and are a good of Section XI, Magid's gloves do not fall within Chapter 39 and consequently do not fall within heading 3926.

Notwithstanding, and taking into consideration that the knit gloves are partially coated with plastic, the ENs to Chapter 39 provide the following guidance:

> [t]he classification of plastics and textile combinations is essentially governed by Note 1(h) to Section XI, Note 3 to Chapter 56 and Note 2 to Chapter 59.

*See* ENs to Chapter 39 ("Plastics and Textile Combinations").  Considering each of these notes in turn, Note 1(h) excludes goods of Section XI from Chapter 39.  Note 3 to Chapter 56 governs the classification of certain imported products comprised of nonwoven and felt fabric with plastics or rubber, and does not apply to the textile gloves here.  Note 2 to Chapter 59 governs the classification of imported products comprised of "textile fabrics" and plastics.  Note 2 to Chapter 59 provides, in pertinent part:

> Heading 5903 applies to:
>
> > (a) **Textile fabrics, impregnated, coated, covered or laminated with plastics**, whatever the weight per square meter and whatever the nature of the plastic material (compact or cellular), other than (emphasis added):
> >
> > * * *
> >
> > (3) Products in which the textile fabric is either completely embedded in plastics or entirely coated or covered on both sides with such material, provided that such coating or covering can be seen with the naked eye with no account being taken of any resulting change of color (chapter 39);
> >
> > * * *
> >
> > (5) Plates, sheets or strip of cellular plastics, combined with textile fabric, where the textile fabric is present merely for reinforcing purposes (chapter 39);

Heading 5903 falls within Section XI and Note 1(h) excludes goods of Section XI from Chapter 39, thus precluding classification of Magid's gloves in Chapter 39 and consequently heading 3926.

Further, Note 2(a) to Chapter 59 identifies limited exceptions that would require certain plastic/textile combinations to be classified in Chapter 39.  If the textile fabric is "completely embedded or covered on both sides" it is precluded from classification in heading 5903, HTSUS, and classified in Chapter 39.  *See* Note 2(a)(3), Chapter 59, HTSUS (2015).  Here, however, it is

undisputed that only a portion of the knitted gloves are coated, and the knitted textile is not completely embedded in plastics.  Similarly, where the textile fabric "is present merely for reinforcing purposes" such merchandise is removed to Chapter 39.  *See* Note 2(a)(5), Chapter 59, HTSUS (2015).  Here, the fabric portion not only provides mechanical stability and a matrix for the plastic coating, it is what makes the gloves.  *See* Def.'s Ex. 1, Cohen Dep. Tr. at 59:8-10 ("It's really what makes a glove a glove is the shell.")  Therefore, none of Note 2(a)'s exceptions remove Magid's gloves from heading 5903 (and Section XI).

Although Magid argues that Chapter 59, Note 2 "addresses the classification of textile fabrics (not articles) that remain in Chapter 59 unless completely embedded or entirely coated in plastic," Magid's gloves are textile articles made from knitted textile fabric.  Pl.'s Br. at 19.  That the gloves are knit-to-shape does not detract from the fact that knitted textile and plastic impregnated, coated or covered with plastic is covered by Chapter 59, Note 2.  Significantly, both heading 5903 and heading 6116, HTSUS, are within Section XI which covers **textile articles** that are **of any textile fabric**; this does not mean that the article itself has to be classifiable **as** a textile fabric.

Finally, Note 1 to Chapter 39 expressly provides that the term "plastics" does not apply to materials regarded as textile materials of Section XI.  As the materials of the knitted gloves fall within heading 5903, HTSUS (which is part of Section XI) and are not removed by Chapter 59's Note 2(a) exceptions, they are not encompassed by the term "plastics" of Chapter 39.  Because the gloves are not covered by Chapter 39 as plastic articles, and **are** covered by Section XI providing for textile materials, the gloves are classifiable as textile gloves, mitten, mitts impregnated, covered or coated with plastic.  *See* subheading 6116.10.

## IV.     GRI 2(b) IS INAPPLICABLE TO THE CLASSIFICATION OF THE GLOVES AT ISSUE

As established above, the proper classification of the gloves at issue can be achieved through GRI 1 and, thus, it is improper to resort to the remaining GRIs.  However, in direct contravention of GRI 1, Magid erroneously commences its classification analysis with GRI 2(b). Pl.'s Br. at 11.  Magid incorrectly argues that the imported gloves are *prima facie* classifiable under both heading 3926, HTSUS, and 6116, HTSUS.  Specifically, Magid argues that pursuant to GRI 2(b), subheading 3926.20 "covers articles of apparel and clothing with an unnumbered subheading for 'Gloves, mitten and mitts, knitted or crocheted."  Pl.'s Br. at 12.  Magid further argues that subheading 6116.10 covers textile gloves that are "Impregnated, coated or covered with plastics or rubber."  *Id*.  Magid then concludes that each **heading** references a material or substance – "knitted or crocheted textiles of 6116 and plastics of 3926" and pursuant to GRI 2(b), must be taken to include a reference to combinations of that material with other materials. *Id.*  Magid's analysis is riddled with errors.  The most glaring error is that Magid improperly read in the term "textiles" into heading 6116, HTSUS.  The actual terms of heading 6116, HTSUS, do not contain the word "textiles" or any reference to a material or substance.  Moreover, the proper heading for the imported gloves must be determined before determining the proper subheading. Therefore, any application of GRI 2(b) to the subheadings is incorrect.

GRI 2(b) states:

> Any reference in a heading to a material or substance shall be taken to include a reference to mixtures or combinations of that material or substance with other materials or substances. Any reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance. The classification of goods consisting of more than one material or substance shall be according to the principles of rule 3.

The first sentence in GRI 2(b) addresses the scope of headings encompassing a material or substance.  This portion of GRI 2(b) extends the terms of those types of headings to include mixtures or combinations of other materials with the named material or substance.  *See Explanatory Note (X)* to GRI 2(b) (providing the example "e.g, **heading 05.07 - ivory**").

In the next sentence, GRI 2(b) extends the scope of provisions that pertain to specifically referenced goods made of a given material or substance.  Such references extend to goods consisting "wholly or partly" of the named material or substance. GRI 2(b).  Effectively, GRI 2(b) extends the scope of a heading to include goods which do not consist wholly of a particular material or substance.  *See Explanatory Note (XI)* to GRI 2(b).  The ENs to GRI 2(b) make clear that the rule does not expand provision to cover goods that "**cannot be regarded, as required under Rule 1, as answering the description in the heading; this occurs where the addition of another material or substance deprives the goods of the character of goods of the kind mentioned in the heading.**"  *See Explanatory Note (XII)* to GRI 2(b).

Magid relies on the latter portion of GRI 2(b) for its argument that "each heading refers to a substance or material" and should be extended to cover "combinations."  However, the relevant headings in this case do not fit the criteria of GRI 2(b) because they both do not refer to a substance or material.  Heading 6116 refers to "Gloves, mittens and mitts" without regard for the material from which these items are made, while heading 3926 covers "other articles of plastic."  Furthermore, as discussed above, there is no need for these headings to be extended in scope by GRI 2(b).  The gloves easily fit within the single heading 6116 and classification can be achieved through the application of GRI 1.

Accordingly, GRI 2(b) does not apply to the classification analysis here.

**V.      GRI 3(a) AND (b) ARE INAPPLICABLE TO THE CLASSIFICATION OF THE GLOVES AT ISSUE**

Magid's primary argument is that the proper classification of the gloves at issue should be achieved through GRI 3(b).  As we established previously, GRI 1 directs that the gloves are properly classifiable in heading 6116, and the gloves are not *prima facie* classifiable in two headings.  We have also established that GRI 2(b) is not applicable to the classification of the gloves.  It follows then that GRI 3(b) is likewise inapplicable.  However, for the sake of assisting the Court with reaching the correct classification for the gloves, we will address Magid's arguments under GRI 3(b).

Rule 3 provides, in relevant part:

When by application of Rule 2 (b) or for any other reason, goods are, *prima facie,* classifiable under two or more headings, classification shall be effected as follows:

(a)      The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods ..., those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

(b)      Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

Here, the application of GRI 3(a) results in the classification of the gloves in heading 6116.  As we established previously, heading 6116 ("Gloves, mittens, and mitts, knitted or crocheted") is an *eo nomine* provision that is more specific than heading 3926 ("Other articles of

plastic. . .”), which is a basket provision.  Indeed, the ENs to heading 3926 confirms the less specific nature of the provision:

> This heading covers articles, not elsewhere specified or included, of plastics (as defined in Note 1 to the Chapter) or of other materials of headings 39.01 to 39.14.

The application of GRI 3(b) yields the same result -- classification of the gloves under heading 6116.  GRI 3(b) will only apply to imported merchandise that cannot be classified pursuant to GRI 1 and that is *prima facie* classifiable in two or more headings of the HTSUS. GRI 3(b) “assumes that the article is a composite good, not encompassed by a single heading, which will be classified according to the component of the subject merchandise which imparts the good with its “essential character.”’  GRI 3(b).  *Wagner Spray Tech Corp. v. United States*, 31 CIT 676, 680 (2007).  As we established above, the merchandise at issue is classifiable pursuant to GRI 1 and, therefore, consideration of GRI 3(b) is unnecessary.  However, should the Court reach GRI 3(b), we provide the discussion below demonstrating that the essential character of the gloves is provided by the knit shells.

The essential character inquiry is factual in nature and involves the weighing of a number of diverse factors. The Explanatory Notes to GRI 3(b) state that "[t]he factor which determines essential character will vary as between different kinds of goods.   It may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods." *Home Depot*, 491 F.3d at 1336-37; Explanatory Note for GRI 3(b) (VIII). Essential character is also defined as "[t]he character of an article . . . which strongly marks or serves to distinguish what it is.  Its essential character is that which is indispensable to the structure, core or condition of the article, *i.e.*, what it is." *Home Depot USA, Inc. v. United States*, 427 F. Supp. 2d 1278, 1293 (Ct. Int'l Trade

2006), *aff'd*, 491 F.3d 1334 (Fed. Cir. 2007) (citing *A.N. Deringer, Inc. v. United States*, 66 Cust.

Ct. 378, 383 (1971)); *see also Better Home Plastics Corp. v. United States*, 916 F. Supp. 1265,

1267 (Ct. Int'l Trade 1996), *aff'd*, 119 F.3d 969 (Fed. Cir. 1997).  An article's primary function

has also been the basis for the determination of essential character.  *3G Mermet Fabric Corp. v.*

*United States*, 135 F. Supp. 2d 151, 159 (Ct. Int'l Trade 2001).

Magid's attempt to portray the plastic coatings as the most important portion of the

gloves at issue completely disregards the critical role of the gloves' knit shells.  Magid argues

that the plastic on the palm of the gloves at issue imparts the essential character as the plastic

provides the grip, abrasion resistance, and oil diversion.  But Magid cannot close its eyes to the

importance of the gloves' knit shells.  Indeed, Magid's own marketing materials and website

highlight the fact that the knit shells provide resistance to cuts and lacerations.  The knit shells

also provide comfort, breathability, and abrasion resistance.  The knit shells provide the structure

of the glove.

A glove is defined as "a covering for the hand having separate sections for each of the

fingers and the thumb and often extending part way up the arm."  https://www.merriam-

webster.com/dictionary/glove (last visited on June 9, 2021).  The knit shell provides the

structure of the glove as the shell covers the hand, and has separate sections for each finger and

extends to the wrist.  *See* Samples.  Indeed, Magid, through its USCIT Rule 30(b)(6) designated

agent Mr. Gary Cohen who is the Director of Strategic Supply, testified extensively regarding the

structural role of the knit shell.  *See* Ex. B, Transcript of Deposition of Gary Cohen (Dep. Tr.).

Mr. Cohen testified that:

> "It's really what makes a glove a glove is the shell.  If you don't
> put a coating on it, it is still a glove, right?"

*Id*. at 59:8-10.

In addition to providing the structure to the glove, the knit shell also provides cut resistance and resistance to abrasion.  In fact, Mr. Cohen testified that "The coating itself doesn't have cut resistance."  *Id*. at 59:6-8.  The yarns used to make the glove are specially designed to provide the cut resistance of the glove.

> A:   Yes.  It is—different yarns go into making the shell to add cut resistance.  There is different things you would knit into the shell to add the cut resistance.
>
> Q:   So if your general purpose – let's start with cut resistance.  You said there is different things that you could put into the shell.  If I wanted a cut resistant glove, what would you put into the shell?
>
> A:   Well, so the really big difference is, you know, the general purpose shells are 100 percent polyester, you know, an old T-shirt or whatever, right?  The main ingredient or yarn on a cut resistant glove is specific as the ones we're talking about today is called HPPE.  The four letters HPPE or High Performance Polyethylene.  That itself has cut resistance, where the polyester does not.  So its inherently just the way it is designed to have some ability to have cut resistance to it.
>
> Now there is other things that we can add to it as well.  So in the case of the GPD546, it is just High Performance Polyethylene or HPPE.  Now the GPD590 has HPPE as well as glass fiber mixed into it.  That's how you are able to achieve a higher cut resistance and it's a core.  The glass fiber is called a core.

14:18-15:15.

The knit shell also controls the amount of coating that is absorbed.  Mr. Cohen testified:

> Q.     So is it the shell sort of that determines how much polyurethane could be absorbed or put on the glove?
>
> A.     Yes.  The shell determines the cover resistance as well as that.

16:2-6.

18

Also relevant to determining classification is an importer's marketing of the goods.  *Mead Corp. v. United States*, 283 F.3d 1342 (Fed. Cir. 2002).  *See also Brooks Brothers v. United States*, 68 Cust. Ct. 91, 98 (1972).  Magid's website educates customers on the features of its gloves.  With respect to cut-resistance, Magid makes clear that the yarn used to make the knit shells provide the cut-resistance.  Magid's website states:

### WHAT MAKES A GLOVE CUT-RESISTANT

Cut-resistant gloves and sleeves are an essential part of most safety programs. But how do you choose the right gloves for extreme cut hazards and how exactly does a knit glove protect your workers from cuts and lacerations? The answer**? It's all in the yarn!**

https://www.magidglove.com/safety-matters/choosing-and-using-ppe/cut-resistant-glove-technology (last visited on June 7, 2021) (emphasis added).

To market the gloves at issue, Magid's website contains product descriptions for each model of glove at issue that highlight the critical roles of the knit shells:

Model No. PU50: The "stretch nylon shell is comfortable, breathable with excellent tactile sensitivity."

Model No. PF540:  "The D-ROC PF 540 gloves feature the cut resistance of a high performance polyethylene (HPPE) and spandex blended machine knit shell . . . High performance polyethylene (HPPE) and spandex blended shell provides excellent comfort and dexterity. . . . Machine washable for longer life"

Model No. GP150: "These form fitting gloves, made from 100% stretch nylon, 15 gauge, seamless, machine knit shell and knit wrist cuff, are form-fitting delivering superb comfort and breathability during even the longest shift.  The ROC GP 150 Glove's nylon shell is also tough providing good abrasion resistance and ANSI Cut Level 1 protection."

Model No. GPD546: "These abrasion resistant gloves feature a black and white performance polyethylene (HPPE), LYCRA and polyester fiber blended knit that hides dirt and extends wear."

Model No. GPD590: "The Glove's cut protection, abrasion resistance and dexterity is further supported by a grey polyurethane palm coating that channels

> away oils and ensures added flexibility, dexterity and grip, especially compared to plastic and nitrile coatings."

*See* Pl.'s Ex. D; *see* also Pl.'s Ex. A.

Magid's marketing of the gloves highlight the essential features imparted by the gloves' knit shell.

Thus, Magid's testimony regarding its gloves regarding the structure and cut resistance imparted by the knit shell, along with Magid's marketing materials, unequivocally demonstrate that the knit shell gives the gloves their essential character.  Consequently, even if a GRI 3(b) analysis were warranted, it would lead to classification of the goods under heading 6116, HTSUS, as knitted gloves.

## VI.    IF THE ESSENTIAL CHARACTER OF THE GLOVES AT ISSUE CANNOT BE DETERMINED, THEN PURSUANT TO GRI 3(c), THE MERCHANDISE IS CLASSIFIABLE IN HEADING 6116, HTSUS.

Should the Court find that the essential character of the gloves cannot be determined, the next successive GRI to be applied is GRI 3(c). GRI 3(c) provides, in relevant part, that: "When goods cannot be classified by reference to 3(a) and 3(b), they shall be classified under the heading which occurs last in numerical order among those which *equally merit consideration*." In the event the Court reaches GRI 3(c), the facts of this case requires that the classification of the merchandise at issue in heading 6116, HTSUS, which is the last heading in numerical order among headings 3926 and 6116.  Consequently, the merchandise is properly classifiable under heading 6116, HTSUS, pursuant to GRI 3(c).

## VII.    CBP's ADMINISTRATIVE RULING, HQ H220278, IS ENTITLED TO *SKIDMORE* DEFERENCE

HQ H220278 revoked and modified New York Ruling Letter (NY) N013115 and NY N042821.  HQ H220278 is entitled to deference in accordance with the standard set forth in

*Skidmore.  United States v. Mead Corp.*, 522 U.S. 218, 221 (2001), and *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  Under *Skidmore*, the weight accorded to an administrative judgment in a particular case "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  These factors weigh in favor of granting *Skidmore* deference to HQ H220278.  Additionally, Customs' decisions and interpretations that are adopted after a notice and comment period can be given deference because they indicate Customs' thoroughness.  *Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1356 (Fed. Cir. 2003).

Magid disputes that the ruling is entitled to any deference because prior to December of 2013, CBP had consistently applied GRI 3(b) and classified the gloves "based on the material that covers the palm side."  Pl.'s Br. at 10.  However, HQ H220278 signals CBP's formal change in position, is thorough and well-reasoned, in that it analyzes the relevant chapter notes and headings under GRI 1.  HQ H220278 specifically discusses the errors in the two New York rulings being modified or revoked (which do not themselves contain a thorough analysis) by indicating that they erroneously utilized GRI 3(b) without first considering GRI 1.  Accordingly, CBP's ruling should be accorded *Skidmore* deference.

## **CONCLUSION**

For these reasons, we respectfully request that the Court enter judgment for the United

States and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

By:     /s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Marcella Powell
MARCELLA POWELL
Senior Trial Counsel
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York l0278
Attorneys for Defendant
Dated: June 14, 2021                  Tel. No. 2l2-264-9230 or 1873

CERTIFICATE OF COMPLIANCE PURSUANT TO
USCIT STANDARD CHAMBER PROCEDURE 2(B)

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. TIMOTHY C. STANCEU, JUDGE

_____
                                                            :
MAGID GLOVE & SAFETY                                        :
MANUFACTURING CO. LLC,                                      :
                                                            :
                   Plaintiff,                               :          Court No. 16-00150
                                                            :
            v.                                              :
                                                            :
UNITED STATES,                                              :
                                                            :
                   Defendant.                               :
_____:

        I, Marcella Powell, trial counsel in the Office of the Assistant Attorney General,

Civil Division, Commercial Litigation Branch, International Trade Field Office, who is

responsible for the foregoing brief, relying upon the Microsoft Word count feature of the

word processing program used to prepare the brief, certify that this brief complies with the

type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains

6,175 words.

                                       /s/ Marcella Powell