UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, SENIOR JUDGE

|  |  |  |
|---|---|---|
| MAGID GLOVE & SAFETY MANUFACTURING CO. LLC, | : | |
| Plaintiff, | : | Court No. 16-00150 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Lawrence M. Friedman
Meaghan E. Vander Schaaf
Robert E. Burke

**BARNES, RICHARDSON & COLBURN, LLP**
303 East Wacker Drive
Suite 305
Chicago, IL 60601
(312) 297-9554
lfriedman@barnesrichardson.com

Dated: July 19, 2021

# Table of Contents

POINTS OF AGREEMENT AND CLARIFICATION ............................................................................6
    Agreement ...........................................................................................................................................6
    The Government Misconstrues the Role of Cut Resistance in The Classification of Magid's Gloves and Incorrectly Identifies the Essential Character of The Gloves ...........................................6

HEADING 6116 IS LIMITED TO TEXTILE PRODUCTS AND DOES NOT FULLY DESCRIBE THE COATED GLOVES ...............................................................................................10

THE PROPER APPLICATION OF GRI 2 AND GRI 3 ....................................................................12

IN THE ALTERNATIVE, SHOULD THE COURT RESOLVE THIS MOTION BASED ON GRI 1, MAGID PREVAILS ................................................................................................................13

THE GOVERNMENT IGNORED THE APPLICATION OF *KALLE* ........................................15

CONCLUSION ....................................................................................................................................17

# Table of Authorities

**Cases**

*A.N. Deringer, Inc. v. U.S.*, 66 Cust. Ct. 378, 383, C.D. 4218 (Cust. Ct. 1971) .......................... 9
*Airflow Tech., Inc. v. United States*, 524 F.3d 1287, 1291 (Fed. Cir. 2008) ............................. 10
*DaimlerChrysler Corp. v. United States*, 361 F.3d 1378, 1385 n.4 (Fed. Cir. 2004) ................. 15
*E. I. du Pont de Nemours & Co. v. United States*, 24 Ct. Int'l Trade 1045, 1048, 116 F. Supp. 2d 1343, 1347 1344 (2000). ................................................................................................................. 15
*Home Depot USA, Inc. v. United States*, 30 CIT 445, 460, 427 F. Supp. 2d 1278, 1293, SLIP OP. 2006-49 (2006), *aff'd*, 491 F.2d 1334 (Fed. Cir. 2007) ................................................. 9
*Kalle USA, Inc. v. United States*, 2019 U.S. App. LEXIS 13252 (Fed. Cir., May 2, 2019) .... 11, 13, 15, 16
*Kalle USA, Inc. v. United States*, 273 F. Supp. 3d 1319, 1326 n.5. (Ct. Int'l Trade 2017) .................. 11, 13
*Marshall Field & Company v. United States*, 45 C.C.P.A. (Customs) 72, 81 (1958) ................. 16
*Mattel, Inc. v. United States*, 926 F.2d 1116, 1120 (Fed. Cir. 1991) ......................................... 16
*Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 928 n.2. (Fed. Cir. 2003) .......................... 11
*Pima W. v. United States*, 20 Ct. Int'l Trade 110,114, 915 F. Supp. 399, 403 (1996) ............... 12
*Quaker Pet Grp., LLC v. United States*, 374 F. Supp. 3d 1375, 1379 ....................................... 12
*Riddell, Inc. v. United States*, 906 F. Supp. 2d 1355, 1367, n.6. (Ct. Int'l Trade 2013) ............. 12
*Structural Indus. v. United States*, 356 F.3d 1366, 1370 (Fed. Cir. 2004) .................................. 9
*Telebrands Corp. v. United States*, 36 Ct. Int'l Trade 1231, 1235, 865 F. Supp. 2d 1277 (2012) ................ 12

**Statutes**

Chapter 39, Note 2(p), HTSUS ................................................................................................... 13
Chapter 59, Note 2, HTSUS. ....................................................................................................... 14
General Rule of Interpretation 1, HTSUS ................................................................................... 11
General Rule of Interpretation 2, HTSUS ................................................................................... 12
General Rule of Interpretation 3, HTSUS ................................................................................... 12
Heading 3926, HTSUS ................................................................................................................ 12
Section XI, Note 1(h), HTSUS .................................................................................................... 13
Subheading 3926.20.1050, HTSUS ............................................................................................... 9
Subheading 7019.90.5050, HTSUS ............................................................................................... 6

**Other Authorities**

*Dictionary of Textiles* 99 (1st ed. 1915) ..................................................................................... 10
*Explanatory Notes*, GRI 3(b), Note VIII .................................................................................... 9
*Explanatory Notes* 70.19 ............................................................................................................. 6
*Explanatory Notes*, Section XI Note(d) ...................................................................................... 6
*Funk & Wagnalls New Comprehensive International Dictionary of the English Language* 1263 (1978) ............. 16
*Magid® KnitMaster® 30NY 8½" Lightweight Machine Knit Nylon Gloves*, https://www.magidglove.com/magidr-knitmasterr-30ny-8-lightweight-machine-knit-nylon-gloves-30nypp (last visited on July 13, 2021) ......................................................................... 8
*New Collegiate Dictionary*, 1165 (8th ed. 1981) ...................................................................... 16
*Random House Webster's College Dictionary*, 1345 (McGraw-Hill ed. 1991) ........................ 16
*The American Heritage Dictionary of the English Language*, 1332 (New College ed.1975) ..... 10
*The New Shorter Oxford English Dictionary*, 552 (Thumb Index ed. 1993) ............................ 11
*Webster's New International Dictionary of the English Language*, 2540 (2nd ed. 1959) ......... 16

**Treatises**

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, ECF No. 50 ............................................................................................................. passim

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ECF No. 44 .................................................................................................................... 13, 15

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT Exhibit. A. Magid Product Specifications ECF No. 44, 3. ................................................ 7, 8

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT Exhibit. B. Deposition Testimony of Gary Cohen ECF No. 44, 4 ................................... 7, 8

MORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT Exhibit. D. Magid Website Descriptions ECF No. 44, 6. .................................................... 8

MORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT Exhibit. E. Plaintiff's Responses to Defendant's First Set of Interrogatories ECF No. 44, 7 .......... 8

**Agency Materials**

HQ 967658 (October 11, 2005) ............................................................................................... 13

*What Every Member of the Trade Community Should Know About: Gloves, Mittens & Mitts, Not Knitted or Crocheted, Under the HTSUS*" (CBP, 2008) ................................................. 13

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. TIMOTHY C. STANCEU, SENIOR JUDGE

|  |  |
|---|---|
| MAGID GLOVE & SAFETY MANUFACTURING CO. LLC, | : |
| Plaintiff, | : Court No. 16-00150 |
| v. | : |
| UNITED STATES, | : |
| Defendant. | : |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Magid Glove & Safety Manufacturing Co. LLC ("Magid"), by and through its attorneys, respectfully submits this response to defendant United States' ("Government" or "Defendant") Cross Motion for Summary Judgment and Reply to Defendant's Opposition to Magid's Motion for Summary Judgment. For the reasons discussed herein and in our Memorandum in Support of Plaintiff's Motion for Summary Judgement, we respectfully request that the Court find that the merchandise at issue is classifiable in subheading 3926.20.1050, Harmonized Tariff Schedule of the United States (HTSUS), deny defendant's cross motion for summary judgment, and grant our original motion for summary judgment.

## POINTS OF AGREEMENT AND CLARIFICATION

**Agreement**

Magid agrees that there are no material facts in dispute in this matter. The samples accurately depict the imported merchandise subject to this action. The only outstanding question is the proper application of the text of the HTSUS to the gloves and, if the text fails to resolve the matter, determining the essential character of the gloves based on the facts presented.

**The Government Misconstrues the Role of Cut Resistance in The Classification of Magid's Gloves and Incorrectly Identifies the Essential Character of The Gloves**

The Government argues that "the structure and cut resistance imparted by the knit shell, along with Magid's marketing materials, unequivocally demonstrate that the knit shell gives the gloves their essential character," citing the presence of High-Performance Polyethylene (HPPE) and glass fiber[1] in some models. Mem. Opp'n Pl.'s Mot. Summ. J. Supp. Def.'s Cross Mot. Summ. J. 20, ECF No. 50 [*hereinafter* Defendant's Cross Motion]. With respect to the cut resistance of the gloves, the Government should be aware and the Court should note that, not every glove at issue has the same level of cut-resistance. While protection from punctures and blade cuts is provided primarily by the High-Performance Polyethylene (HPPE) yarns or a combination of HPPE and glass fiber yarns in the knit shell, that fact does not apply to all the gloves at issue. Magid's glove styles GPD546, PF540, GPD 590 have American National Standards Institute ("ANSI") Cut ratings of A2 or higher. Magid Product Specifications, attached as Mem. Supp. Pl.'s Mot. Summ. J. Ex. A. 6-11,

---

[1] Note that *Explanatory Notes*, Section XI Note(d) excludes from the section "Glass fibres, yarns, fabrics, and articles made therefrom, and composite articles of glass fibres and textile fibres having the character of articles of glass fibres (Chapter 70), other than embroidery with glass thread on a visible ground of fabric." Should the Court accept the Government's proposition that cut resistance is important in determining essential character, then the Court should take the Explanatory Note into consideration. In that case, the strength and protection provided by the glass give the shell the character of an article of glass fibers to be classified in Heading 7019, which the Explanatory Notes state covers "curtains, draperies and other articles of woven glass fibers." *Explanatory Notes* 70.19. The correct classification would be 7019.90.5050.

ECF No. 44, 3 [*hereinafter* Product Specifications]. Mr. Cohen's deposition testimony makes a distinction between the cut levels and their application:

> Polyurethane is the most popular coating that we sell really in the United States. But it's mainly handling. So, for example, box handling, package handling, small parts, people are trying to screw parts together, assembly lines, things like that. They are able to get better grip, you know. You protect your hand from dirt and other things, oils a little bit and whatnot. It is really just provides really good grip. And really just general -- that is why it is called "general purpose". It is really very widespread. It is very general. The most basic kind of work gloves you can buy.

Deposition Testimony of Gary Cohen, 17:10-21 (attached as Mem. Supp. Pl.'s Mot. Summ. J. Ex. B, ECF No. 44, 4 [*hereinafter* Cohen Dep.] Mr. Cohen continued, "The higher cut ones would be used in like steel mills or oil and gas and construction when there is just possibility of sharp edges on an assembly lines or if they are grabbing pieces of steel during the melting process or the manufacturing process." Cohen Dep. :11-23. "[The appropriate cut level for the glove] really just depends on what risk hazard or what cut risk hazards there is in the application." Cohen Dep. 18:16-17.

For styles without these high-tech fibers, the polyurethane palm coating provides protection from scratches and minor cuts present in appliance repair, automotive work, assembly work, metal stamping, metal fabrication, general maintenance, and shipping and receiving tasks. *See* Product Specifications 2, 4, 12. For example, Models GP150 and BP169, which are made with shells of 100% nylon yarn and 100% polyester yarn, respectively, both have an ANSI Cut rating of A1. *Id.* at 2-5. While A1 is the lowest cut rating, it nevertheless represents protection for the wearer. Moreover, the PU50 style has no cut protection rating at all, with an ANSI Cut rating of 0, and is purchased for applications where the risk of cuts is low such as electronics departments, paint departments and laboratories with precise and delicate options where lint is a concern. *Id.* at 12-13. Nevertheless, purchasers seek out polyurethane coated gloves for the specific and important properties imparted by the plastic coating material. Cohen Dep. 59:15-16.

The polyurethane coating of the glove offers improvements over uncoated gloves. Most important, the plastic provides protection from abrasions. Abrasion resistance measures how well the glove resists the loss of material from rubbing on rough surfaces. Cohen Dep. 18:21-24, 19:1-5. The gloves at issue here have ANSI Abrasion Resistance Levels between two and six. *See* Product Specifications 3, 5, 7, 9, 11, 13. The abrasion resistance provided by the polyurethane coating adds durability and extends the life of the glove while keeping the gloves lightweight and comfortable. *See* Product Specifications 1, 3, 5, 7, 9, 11; Magid Website Descriptions, attached as Exhibit D to Mem. Supp. Pl.'s Mot. Summ. J. 2, 4, 5, 6, ECF No. 44, 6. Other benefits of the plastic coating include resistance to dirt and channeling oil and other liquids from the fingers and palm while also providing the wearer with greater dexterity and grip. Cohen Dep. 18:24-19:5, 34:1-4, 17:15,17:16-17; *see also* Plaintiff's Responses to Defendant's First Set of Interrogatories attached as Exhibit E to Mem. Supp. Pl.'s Mot. Summ. J, ECF No. 44, 7.

Magid sells knit shell gloves without any polyurethane coating. *Magid® KnitMaster® 30NY 8½″ Lightweight Machine Knit Nylon Gloves*, https://www.magidglove.com/magidr-knitmasterr-30ny-8-lightweight-machine-knit-nylon-gloves-30nypp (last visited on July 13, 2021). These gloves have similar application to the PU50 style (electronics departments, paint departments), however, as Mr. Cohen stated in his deposition testimony, with a coated glove, "They are able to get a better grip… you protect your hand from dirt and other things, oils a little bit and whatnot." Cohen Dep. 17:15-8. Which is to say, the polyurethane coating provides protection against abrasions, dirt, oil, and other liquids while providing grip and dexterity that simple knit shells without a plastic coating do not provide. Consumers choose to purchase its plastic-coated gloves **because** they have a polyurethane coating. *See* Cohen Dep. 59:13-16.

The Government's focus on the cut resistance of the shell fails to recognize the important function and value added of the plastic coating. Plaintiff argues that the essential character of these

8

polyurethane coated gloves is imparted by the plastic material. Nothing about the relative role of the plastic compared to the shell with respect to cut resistance indicates that the shell is the essential character for classification. Moreover, the entire glove includes a cut resistant quality, including that portion that is covered by the polyurethane. Therefore, the covered portion includes both cut resistance and abrasion resistance.

The essential character inquiry is factual in nature and involves weighing a number of diverse factors. *Structural Indus. v. United States*, 356 F.3d 1366, 1370 (Fed. Cir. 2004). To determine which component provides essential character, Explanatory Note VIII to GRI 3(b), provides:

> The factor which determines essential character will vary as between different kinds of goods. It may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods.

The essential character of an article is "the component which is indispensable to the structure, core, or condition of the article, i.e., the attribute which strongly marks or serves to distinguish what it is." *Home Depot USA, Inc. v. United States*, 30 CIT 445, 460, 427 F. Supp. 2d 1278, 1293, SLIP OP. 2006-49 (2006), *aff'd*, 491 F.2d 1334 (Fed. Cir. 2007), *citing A.N. Deringer, Inc. v. U.S., 66 Cust. Ct.* 378, 383, C.D. 4218 (Cust. Ct. 1971).

The plastic portion of these gloves imparts the essential character as it provides the grip, abrasion resistance, and oil diversion that customers want in a glove of this kind for its intended uses. Customers chose the plastic-coated gloves over uncoated knit gloves, therefore, in line with the relative significance of the plastic portion of the glove to the overall use of the gloves, they should be classified accordingly under HTSUS 3926.20.1050.

9

## HEADING 6116 IS LIMITED TO TEXTILE PRODUCTS AND DOES NOT FULLY DESCRIBE THE COATED GLOVES

The Government argues that while Heading "6116, HTSUS, covers 'Gloves, mittens, and mitts, knitted or crocheted.' The heading is not limited by material or substance and, thus, is sufficiently broad to cover the glove as a whole." Defendant's Cross Motion 4. Further, the Government states, "There is no question that the articles at issue constitute 'gloves … knitted' and the heading is not limited to gloves that are knitted from any specific material. Thus, the knitted gloves in their entirety are plainly described by the terms of heading 6116." *Id.* at 8. Similarly, the Government states that "The actual terms of heading 6116, HTSUS, do not contain the word 'textiles' or any reference to a material or substance." *Id.* at 13.

This contention clearly ignores or misunderstands the express limitations in the Heading. To be classifiable in HTSUS Heading 6116, the gloves must be knitted or crocheted. HTUS, Heading 6116. Neither term is defined in the HTSUS. When a tariff term is not defined, "the term's correct meaning is its common or dictionary meaning in the absence of evidence to the contrary." *Airflow Tech., Inc. v. United States*, 524 F.3d 1287, 1291 (Fed. Cir. 2008). The Court may also rely on its own understanding of the terms used. *Id.*

"Textile" is defined as "Cloth: fabric, especially one that is woven or **knitted**." *The American Heritage Dictionary of the English Language*, 1332 (New College ed. 1975)(emphasis added). Similarly, "fabric" refers to, among other things, "Any cloth produced by joining fibers **as by knitting**, weaving, or felting." *Id.* 468 (emphasis added). "Knit goods," including Magid's shells, are "loose **fabrics**, elastic both ways, made of one or more continuous threads interlaced with itself and forming rows of loops holding each other but not tied." *Dictionary of Textiles* 99 (1st ed. 1915)(emphasis added). They are made either with the weft thread or with warp. *Id.* Although not directly relevant, "Crochet" is "a kind of knitting done using a single hooked needle to form

10

intertwined loops; knitted material made in this way." *The New Shorter Oxford English Dictionary*, 552 (Thumb Index ed. 1993). Therefore, knitted or crochet gloves of Heading 6116 are composed of "loose fabrics," which are textiles. Thus, Heading 6116 refers to gloves, mittens and mitts that are of textile materials. But, Magid's gloves are also embedded in a coating of polyurethane plastic that is neither knit nor crochet. *See* Samples.

Moreover, the Government argues against its own position when it notes, "Significantly, both Heading 5903 and Heading 6116, HTSUS, are within Section XI which covers textile articles that are of any textile fabric . . . ." Defendant's Cross Motion 12. Magid notes that General Rule of Interpretation 1 expressly states that "The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only . . . ." HTSUS, General Rule of Interpretation 1 (hereinafter "GRI 1"). *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 928 n.2. (Fed. Cir. 2003); *Kalle USA, Inc. v. United States*, 273 F. Supp. 3d 1319, 1326 n.5. (Ct. Int'l Trade 2017) *affirmed Kalle USA, Inc. v. United States*, 2019 U.S. App. LEXIS 13252 (Fed. Cir., May 2, 2019) Magid nevertheless agrees that articles of Section XI are composed of textiles and that gloves of Heading 6116 must be of textiles made by knitting or crocheting. Consistent with the definitions above, these are manufacturing operations that are performed on textile materials. Heading 6116, therefore, covers textile gloves that are knitted or crocheted and does not fully describe textile products that are coated with and embedded in plastic.

A simple examination of the samples submitted to the Court shows that the Government's position ignores that the knitted textile component of Heading 6116 only describes a portion of the glove. The gloves also have a plastic coating on the palm side of the glove that encircles the perimeter of the hand. *See* Samples. This coating is a critical component of the gloves and distinguishes the gloves from uncoated textile gloves encompassed by Heading 6116. As the gloves are composed of two or more materials, they cannot be classified under GRI 1.

11

In a confusing element of its GRI 1 argument, the Government suggests that "Heading 3926 is by far a less specific basket provision and less descriptive than Heading 6116 with its *eo nomine* reference to gloves." Defendant's Cross Motion 9. If, as the Government suggests, the Headings and Chapter Notes themselves are dispositive, GRI 1 governs, the Court need not reach GRI 3(a), and it does not undertake a relative specificity analysis. Relative specificity is a question presented only when GRI 1 does not resolve the classification. *Telebrands Corp. v. United States*, 36 Ct. Int'l Trade 1231, 1235, 865 F. Supp. 2d 1277 (2012); *Riddell, Inc. v. United States*, 906 F. Supp. 2d 1355, 1367, n.6. (Ct. Int'l Trade 2013) (*reversed*, in part, on other grounds); *Quaker Pet Grp., LLC v. United States*, 374 F. Supp. 3d 1375, 1379, n.2. (Ct. Int'l Trade 2019); *Pima W. v. United States*, 20 Ct. Int'l Trade 110,114, 915 F. Supp. 399, 403 (1996). If the Government believes these gloves are properly classified based on GRI 1 alone, as it has represented to the Court, Defendant's Cross Motion 4, 7, there is no basis on which the Government should be invoking relative specificity.

## THE PROPER APPLICATION OF GRI 2 AND GRI 3

As established above, neither Heading 6116 nor Heading 3926 fully describes the product. As a result, the Court's analysis must progress through GRI 2. Heading 6116, Heading 3926. The purpose of GRI 2 is to explain how to apply GRI 1 and when to move on to GRI 3. HTSUS, General Rule of Interpretation 2(b) states, in relevant part, "The classification of goods consisting of more than one material or substance shall be according to the principles of rule 3."

Under GRI 2 when, as in this case, the relevant headings only partially describe the product, it is appropriate to move on to GRI 3. HTSUS, General Rule of Interpretation 3. Heading 3926 provides for articles of plastic, not articles of plastic and textile. Similarly, Heading 6116 provides for gloves knitted or crocheted. The text of the heading does not address gloves that are knitted or crocheted and also coated in plastic. Each heading contains a partial description of the gloves at issue and neither encompasses a knit shell that is coated in plastic. Magid, therefore, correctly

12

applied the proper GRI analysis, without contravening GRI 1, to arrive at GRI 3. Moreover, as demonstrated in its principal brief, this approach is consistent with long-standing Customs' practice and current guidance indicating that coated gloves are to be classified under GRI 3 based on the essential character, which is imparted by the material that coats the palm. Mem. Supp. Pl.'s Mot. Summ. J. ECF No. 44; HQ 967658 (October 11, 2005); "*What Every Member of the Trade Community Should Know About: Gloves, Mittens & Mitts, Not Knitted or Crocheted, Under the HTSUS*" (CBP, 2008)[2] ("Gloves ICP").

## IN THE ALTERNATIVE, SHOULD THE COURT RESOLVE THIS MOTION BASED ON GRI 1, MAGID PREVAILS

The Government correctly identifies that the section and chapter notes for Heading 3926 and Heading 6116 establish that the two headings are mutually exclusive. Chapter 39, Note 2(p) provides that the chapter does not cover "Goods of section XI (textiles and textile articles)." Thus, if the plastic-coated gloves are textile articles, they are classified in Section XI. However, Section XI, Note 1(h) expressly excludes from that Section "woven, knitted or crocheted fabrics, felt or nonwovens, **impregnated, coated, covered** or laminated with plastics, or articles thereof, of Chapter 39" (emphasis added). Thus, gloves that are articles of knit fabric that are impregnated, coated, covered or laminated with plastics cannot be classified in Section XI if they are classified in Chapter 39.

The Government claims that the Section Note 1(h) "does not direct that Magid's gloves must fall within a provision of Chapter 39; it merely excludes gloves that are classified in Chapter 39 in the first instance." Defendant's Cross Motion 9, *Citing Kalle USA v. United States*, 273 F. Supp. 3d 1319, 1332 (Ct. Int'l Trade 2017) *aff'd* 923 F.3d 991 (2019)("Thus, a product which is not classifiable under Chapter 39 would not be excluded from Section XI under Note 1(h)"). Magid agrees that the

---

[2] Available at the URL https://www.cbp.gov/sites/default/files/documents/icp029_3.pdf (last visited July 15, 2021).

"Note limits the reach of the headings of Section XI excluding knitted articles impregnated, coated, covered or laminated with plastic, but does not dictate that such articles are classified within Chapter 39." Defendant's Cross Motion 9-10.

However, Magid also agrees with the Government's position that Note 2(a) to Chapter 59 identifies those textiles that are articles of Chapter 39. *See* Defendant's Cross Motion 11. Specifically, if the textile fabric from which the glove is composed is "completely embedded in plastics or entirely coated or covered on both sides" it is precluded from classification in Heading 5903 and is to be classified in Chapter 39. Chapter 59, Note 2, HTSUS. This difference in meaning is clear from a comparison of Section XI, Note 1(h) and Chapter 59 Note 2(a). The former excludes from Section XI specified articles "of chapter 39." The latter states what is **included** in Heading 5903. The note then lists articles that are excluded from Heading 5903 despite possible appearances to the contrary. For each exclusion, the note includes a parenthetical providing the correct (or "usually" correct) classification. With respect to products "in which the textile fabric is either completely embedded in plastics or entirely coated or covered on both sides with such material, provided that such coating or covering can be seen with the naked eye with no account being taken of any resulting change of color," the HTSUS provides that correct classification as being within Chapter 39. *Id.* Recognizing this mandate, the Government argues, as it must, that the gloves are not completely embedded in plastic. Defendant's Cross Motion 5, 12. This is factually untrue. *See* Samples. Moreover, as established below, it is legally incorrect.

## THE GOVERNMENT IGNORED THE APPLICATION OF *KALLE*

The Government's argument concerning the application of GRI 1 only appears to work because it excludes any meaningful discussion of the Federal Circuit decision in *Kalle USA, Inc. v. United States*, 923 F.3d 991 (Fed. Cir. 2019). The Court should not fall for this smoke-and-mirrors effort to distract from the controlling legal analysis. *Kalle* directly addressed the application of the very same section and chapter notes presently before the Court. The decision has particular significance because this Court is bound by decisions of the Federal Circuit. *E. I. du Pont de Nemours & Co. v. United States*, 24 Ct. Int'l Trade 1045, 1048, 116 F. Supp. 2d 1343, 1347 1344 (2000). That is also true of the reasoning for the decision. According to the Federal Circuit, where a superior court has explicitly and carefully considered a statutory text, the subordinate Court should follow that authority. *DaimlerChrysler Corp. v. United States*, 361 F.3d 1378, 1385 n.4 (Fed. Cir. 2004). The analysis in *Kalle*, therefore, should inform this Court's decision.

In *Kalle*, the Federal Circuit defined the operative terms of Chapter 59 Note 2(a). *Kalle* concerned the classification of sausage casing comprised of a woven textile sheet coated with a layer of plastic on one side. *Kalle USA, Inc. v. United States*, 923 F.3d 991, 993 (Fed. Cir. 2019). The Court of appeals held that the casings were not "completely embedded in plastics" and therefore, classified under HTSUS subheading 6307.90.98. *Id.* at 997. Of particular relevance, the Federal Circuit defined "embedded" as "set or fix[ed] firmly in a surrounding mass." *Id.* at 995. According to the Federal Circuit, "[t]he common definition of 'embedded' is 'set or fix[ed] firmly in a surrounding mass.'" *Id.* at 995. Importantly, the Federal Circuit also held that to be "completely embedded" does not require that all sides of the fabric be coated with plastic. *Id.* at 995-96.

Applying this test, the question before the Court is whether the textile shells of the Plaintiff's gloves are set or fixed in a surrounding mass of plastic. In Plaintiff's principal brief, Magid carefully and in detail defined the relevant terms, including "surrounded." Mem. Supp. Pl.'s Mot. Summ. J.

15

21, ECF No. 44. These definitions include "to surround, to enclose on all sides; encompass;" "something that surrounds, as the area, border, etc., around an object or central space," *Random House Webster's College Dictionary*, 1345 (McGraw-Hill ed. 1991); "to enclose on all sides: envelop; to extend around the margin or edge of," *New Collegiate Dictionary*, 1165 (8th ed. 1981); "to enclose on all sides; to envelop; to encompass; to encircle; to extend around or about the margin or edge of," *Webster's New International Dictionary of the English Language*, 2540 (2nd ed. 1959); "to extend complete around; be on all sides of; encircle" *Funk & Wagnalls New Comprehensive International Dictionary of the English Language* 1263 (1978).

Once dipped into liquid polyurethane, the pertinent portion of the textile shells of Plaintiff's gloves are surrounded by a mass plastic. This is evident from the samples, which show that the plastic completely encircles the palm side of the shell and the perimeter of the hand around the fingers and thumbs, and up along the vertical sides of the hand. The shell has been physically pressed down into liquid plastic, which by adhering to the shell, surrounding it in a mass of plastic. As the Court knows, samples of merchandise are "most potent witnesses." *Mattel, Inc. v. United States*, 926 F.2d 1116, 1120 (Fed. Cir. 1991)(Clevenger, J. dissenting), *citing, Marshall Field & Company v. United States*, 45 C.C.P.A. (Customs) 72, 81 (1958). An examination of the samples, considered in light of the Federal Circuit's decision in *Kalle* shows that the essential portions of the textile shells are "completely embedded" in plastic. As such, the textile material, if separately presented, would be excluded from Heading 5903 and the resulting product is an article of Chapter 39.

The Government makes no effort to distinguish or limit *Kalle*. It is applicable here and should bind this Court with respect to the interpretation of the section and chapter notes. When properly applied to Magid's gloves, *Kalle* indicates that the gloves must be classified as articles of plastic under HTSUS 3926.20.1050.

16

## CONCLUSION

Magid agrees with the Defendant in that there are no material facts in dispute and the Court has sufficient facts to determine the proper classification of the subject merchandise. Magid respectfully asks that this Court deny Defendant's cross motion for summary judgment and grant Plaintiff's original motion for summary judgment and order that the Defendant refund to Magid the excess duties it paid along with interest as applicable.

Respectfully submitted,

**BARNES, RICHARDSON & COLBURN, LLP**

/S/ Lawrence M. Friedman
Lawrence M. Friedman
Meaghan E. Vander Schaaf
Robert E. Burke

303 East Wacker Drive, Suite 305
Chicago, IL 60601
(312) 297-9554
lfriedman@barnesrichardson.com