UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, SENIOR JUDGE

_____

|  |  |
|---|---|
| MAGID GLOVE & SAFETY, MANUFACTURING CO. LLC, | : : : |
| Plaintiff, | : : |
| v. | :   Court No. 16-00150 |
| UNITED STATES, | : : |
| Defendant. | : : |

_____

**REPLY BRIEF IN FURTHER SUPPORT OF
DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

*Of Counsel*:

Paula S. Smith
Assistant Chief Counsel
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

MARCELLA POWELL
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9230 or 1873
Attorneys for Defendant

Dated:   September 17, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, SENIOR JUDGE

_____

| | |
|---|---|
| MAGID GLOVE & SAFETY, <br> MANUFACTURING CO. LLC, | : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :     Court No. 16-00150 |
| UNITED STATES, | : <br> : |
| Defendant. | : |

_____

### REPLY MEMORANDUM IN FURTHER SUPPORT OF
### DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

Defendant, the United States (the Government), submits this reply memorandum in further support of its cross motion for summary judgment.

### INTRODUCTION

In our moving brief, we established that the proper classification of the gloves at issue is achieved through GRI 1, which is the starting point for determining the parameters of the tariff provisions at issue. The competing HTSUS headings are 3926 ("other articles of plastics"), and 6116 ("gloves, mittens, and mitts, knitted or crocheted"), and the parties agree that they are mutually exclusive. Pl.'s Opp. Br. at 13. The tariff term "gloves" in heading 6116, HTSUS, is defined as "a covering for the hand worn for protection against cold or dirt and typically having separate parts for each finger and the thumb." Magid does not dispute that the gloves are covered by the foregoing definition and Magid's own documents and deposition testimony establish that the gloves are "knitted." Therefore, the gloves fall squarely within the terms of

heading 6116, HTSUS, and are articles of Section XI. As such, the gloves cannot be classified in heading 3926, HTSUS.

We also established that the gloves are not classifiable in heading 3926, HTSUS, which is a basket provision for "other articles of plastic." Note 1 to Chapter 39 provides that the term "plastics" in heading 3926, HTSUS, does not cover textiles of Section XI. The gloves, which have knit shells with polyurethane only on the palm-side and front and sides of fingers cannot be an article of "plastics" of heading 3926, HTSUS as Magid contends. Moreover, the Explanatory Notes indicate that heading 3926, HTSUS, covers articles that are **not** described more specifically elsewhere in the HTSUS. The gloves cannot be classified in heading 3926, HTSUS, because they are more specifically described in heading 6116, HTSUS.

Accordingly, the gloves are correctly classified under heading 6116, HTSUS as explained below.

## ARGUMENT

I.  **PURSUANT TO GRI 1, THE GLOVES AT ISSUE ARE PROPERLY CLASSIFIABLE IN HEADING 6116, HTSUS.**

    A.    **Heading 6116, HTSUS, Fully Covers The Imported Gloves.**

In its reply, Magid's opening argument consists of an extensive "essential character" analysis pursuant to GRI 3(b), and Magid's final argument addresses GRI 1. Pl.'s Opp. Br. at 6-9. The GRIs "apply in numerical order, meaning that subsequent rules are inapplicable if a preceding rule provides proper classification." *Well Luck Co., Inc. v. United States*, 887 F.3d 1106, 1111 (Fed. Cir. 2018) (quoting *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1163 (Fed. Cir. 2017)). Thus, a proper classification analysis must begin with GRI 1, examining the terms of the headings and relative section or chapter notes, and thus we first will address Magid's flawed GRI 1 argument.

2

Magid argues that heading 6116, HTSUS, does not fully describe the subject gloves because of the "express limitations in the Heading." *Id*. at 10. According to Magid, heading 6116, HTSUS, requires "gloves" to be knitted or crocheted. *Id*. at 10. Magid then defines the terms "textile," "fabric," and "knit goods" and concludes that those definitions show that "heading 6116 refers to gloves, mittens and mitts that are composed of 'loose fabrics,' which are textiles." *Id*. at 11. Pl.'s Opp. Br. at 10-11. Magid improperly disregards the fundamental rule of statutory interpretation -- statutes must be interpreted as written. *United States v. Post Fish*, 13 Cust. App. 155, 158 (1925). ("We may not add to nor detract from the language used by the legislative body, when that might seem to be, for the particular matter being adjudicated, the more prudent, just, or wise course.") The terms "textile," "fabric," and "knit goods" do not appear in heading 6116, HTSUS, and it is improper to read them into that provision. Moreover and importantly, those terms have no bearing on the interpretation of heading 6116, HTSUS. Congress "is presumed to say in a statute what it means and means in a statute what it says." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Thus, if Congress intended to limit the scope of heading 6116, HTSUS, to a specific constituent material or substance, it would have done so explicitly. Heading 6116, HTSUS, is an *eo nomine* provision that contains only two requirements namely, that the articles must be (1) gloves, mittens or mitts, and (2) knitted or crocheted. The scope of the heading is broad in that it does not contain any references to a specific material or composition. Magid's imported gloves easily satisfy the terms of heading 6116, HTSUS, because they are gloves that are knitted.

Indeed, Magid's suggestion that its knitted gloves, with plastic only on the palm-side and front and sides of fingers, cannot fall within this heading is belied by judicial precedent. This Court has previously classified gloves composed of textiles and plastics in heading 6116,

3

HTSUS. *See H.I.M./Fathom, Inc. v. United States*, 981 F. Supp. 610 (1997). In *H.I.M./Fathom*, the issue before the Court was the proper classification of wetsuits, wetsuit shoes, wetsuit headgear, wetsuit gloves, and weight belts. The wetsuits were composed of a "neoprene and textile laminate made of chemically blown closed-cell neoprene rubber compressed between layers of textile." The wetsuits and wetsuit gloves were composed of the same material. Relevant here, the Court held that the wetsuit gloves were classifiable in subheading 6116.10.25, HTSUS, as gloves "[i]mpregnated, coated or covered with plastics or rubber." *HIM/Fathom* is instructive in that it shows that heading 6116, HTSUS, is broad enough to cover gloves composed of a textile and another material (rubber). Thus, Magid's argument that the scope of heading 6116, HTSUS, is limited to gloves made only of textile must be rejected.

Finally, Magid contends that the Government invoked GRI 3(b)'s "relative specificity" test when we explained that heading 3926, HTSUS, is a far less specific and less descriptive basket provision than heading 6116, HTSUS. Pl.'s Opp. Br. at 12. Magid misses the point. Heading 3926, HTSUS ("other articles of plastics"), is a basket provision that only covers products that cannot be classified in any other provision of the HTSUS. Thus, the gloves at issue cannot be classified in heading 3926, HTSUS, if they are covered by the terms of heading 6116, HTSUS. Relative specificity is immaterial to the classification of the subject gloves. The gloves at issue fall within heading 6116 under a GRI 1 analysis.

**B.   The Gloves Are Not "Completely Embedded In Plastics."**

Magid argues that *Kalle USA, Inc. v. United States*, 923 F.3d 991 (Fed. Cir. 2019) "should inform this Court's decision." Pl.'s Opp. Br. at 15-16. Relying on Chapter 59, Note 2(a), and heading 5903, Magid asserts that the "question before the Court is whether the textile

4

shells of the Plaintiff's gloves are set or fixed in a surrounding mass of plastic."[1]  Pl.'s Opp. Br. 15-16.

In *Kalle*, the question before the Federal Circuit was whether imported sausage casings were "completely embedded in plastics" as that term is used in Note 2 to Chapter 59.  923 F.3d at 992.  The sausage casings were comprised of a woven textile sheet that was coated with a layer of plastic on one side.  The plastic coating only filled the interstitial spaces between the textile fibers to ensure that the casing's textile character remained recognizable even after a coating.  *Id*. at 993.  The competing tariff provisions were subheadings 6307.90.98, HTSUS[2], and 3917.39.00, HTSUS[3].  *Id*.  The Federal Circuit began its classification analysis by acknowledging that Note 1(h) to Section XI and Note 1(p) to Chapter 39 are "mutually exclusive exclusionary notes" that preclude an imported article from being classifiable under both Section XI and Chapter 39.  *Id*. at 994.  The Court then held that where an article is comprised of both textile and plastic, the Court "look[s] to Chapter 59 to determine whether the article should be classified as a textile under Section XI or a plastic under Chapter 39."  *Id*.  Pursuant to Note 2 to Chapter 59, products that fall within Chapter 39 would be: "Products in which the textile fabric is either completely embedded in plastics or entirely coated or covered on both sides with such material, provided that such coating or covering can be seen with the naked eye with no account

---

[1] In its moving brief, Magid vehemently argued that Chapter 59, Note 2(a), and heading 5903 *did not* apply to its imported gloves.  Pl.Br. at 19 ("First, Chapter 59 is not at issue in classifying gloves of Chapter 61"); at 19-20 ("Thus, contrary to the Government's position, the notes to Chapter 59 have no application to the classification of knit-to-shape goods of Chapter 61."); at 20-21 ("Because the Chapter 59 Note is not applicable to knit to shape products, Magid does not agree that this test is applicable to the current case.")

[2] Subheading 6307.90.98, HTSUS, provides for "[o]ther made up articles, including dress patterns: . . .[o]ther . . .[o[ther."

[3] Subheading 3917.39.00, HTSUS, provides for "[t]ubes, pipes and hoses and fittings therefor (for example, joints, elbows, flanges), plastics" . . . [o]ther . . . [o]ther."

5

being taken of any resulting change of color...." Note 2, Chapter 59. The Court then held that the tariff term "completely embedded" in Note 2 to Chapter 59 means that the fabric must be "completely" or entirely fixed in a surrounding mass of plastic. *Id*. at 995. The term does not require "every surface of the fiber to be fixed and surrounded by a mass of plastic," but even with this qualification, the Court affirmed the trial court's decision and held that the sausage casings, with plastic on the entirety of one side, were not "completely embedded in plastics" as that phrase is used in HTSUS Chapter 59 Note 2(a)(3). *Id*. at 996.

Here, the imported gloves are not "completely embedded in plastics." The gloves are partially coated in plastic. The plastic is only on the palm and front and sides of the fingers. The back of the fingers, back of the hand, and entire knit wrist (back and front) is free of plastic. While the term "completely embedded in plastics" does not require every surface of the fiber to be fixed and surrounded by a mass of plastic, the plastic only covers a portion of the glove and does not surround, enclose, or envelope the glove in any respect. *See* Samples. In fact, the plastic on the gloves at issue covers far less surface area than the plastic on the *Kalle* sausage casings, which were coated with a layer of plastic on the entirety of one side. Because the gloves at issue are not "completely embedded in plastics" as they term is used in Note 2 to Chapter 59, they remain classifiable in heading 6116, HTSUS.

**II.   GRI 2(b) IS NOT APPLICABLE TO THE CLASSIFICATION OF THE GLOVES AT ISSUE**

Having established that Magid's gloves are classifiable pursuant to a GRI 1 analysis, there is no need to look to any other GRI. *Well Luck*, 887 F.3d at 1111. Nonetheless, Magid insists upon the application of GRI 2(b). Pl.'s Opp. Br. at 10. In our moving brief, we established that Magid's interpretation and application of GRI 2(b) to headings 3926 and 6116, HTSUS, was incorrect. Def.'s Br. at 13-14.

Specifically, GRI 2(b) is only applicable to headings that contain a reference to a "material or substance." Heading 6116, HTSUS, makes no reference to a material or substance for the gloves, mittens or mitts that fall within it. Furthermore, GRI 2(b) cannot be used to "widen the heading so as to cover goods which cannot be regarded, as required under GRI 1, as answering the description in the heading; this occurs where the addition of another material or substance deprives the goods of the character of goods of the kind mentioned in the heading." Explanatory Note to GRI 2(b). Here the gloves fit the description in heading 6116 as required by GRI 1 and reading in additional qualifications is impermissible. Moreover, Note 1 to Chapter 39 states that the term "plastics" does not cover textile materials of Section XI and thus Magid's attempt to broaden heading 3926 to cover textile gloves is erroneous.

Despite the failings in its GRI 2(b) argument, Magid continues to advance its argument that the gloves at issue are *prima facie* classifiable under both heading 3926, and heading 6116, HTSUS, and that pursuant to GRI 2(b) and GRI 3(b) the gloves should be classified in heading 3926, HTSUS. Specifically, Magid argues that heading 3926, HTSUS, "provides for articles of plastic, not articles of plastic and textile" and that the text of heading 6116, HTSUS, "does not address gloves that are knitted or crocheted and also coated in plastic." *Id*. at 12. Magid then concludes that "each heading contains a partial description of the gloves at issue and neither encompasses a knit shell that is coated in plastic" and therefore GRI 2(b) applies to "arrive at GRI 3(b)." *Id. at 13*. Magid misapplies GRI 2(b). The purpose of GRI 2(b) is to extend a heading to cover mixtures or combinations of other materials with the named material. Magid fails to explain how GRI 2(b) applies to heading 6116, which does not refer to a material or substance. Furthermore, Note 1 to Chapter 39 states that the term "plastics" does not refer to textile materials of Section XI. Magid fails to explain how GRI 2(b) extends heading 3926

(other articles of plastics) to cover the textile knit shell which is essentially a textile glove. Accordingly, Magid's GRI 2(b) argument must be rejected.

### III.   THE GLOVES AT ISSUE ARE NOT *PRIMA FACIE* CLASSIFIABLE UNDER HEADINGS 3926 AND 6116, HTSUS, THEREFORE, GRI 3(b) IS NOT APPLICABLE TO THE CLASSIFICATION OF THE GLOVES.

Magid's argues that the gloves are *prima facie* classifiable under headings 3926 and 6116 and therefore GRI 3(b)'s "essential character" analysis applies to the classification of the gloves at issue. Magid is incorrect. GRI 3(b) states:

> Rule 3 provides, in relevant part:
>
> When by application of Rule 2(b) or for any other reason, goods are, *prima facie,* classifiable under two or more headings, classification shall be effected as follows:

By its express language, GRI 3(b) only applies when goods are *prima facie* classifiable in two or more headings as a result of (1) application of GRI 2(b), or (2) for any other reason. We previously established that GRI 2(b) does not apply to the classification of the gloves at issue. Moreover, the HTSUS contemplates the importation of articles composed of textiles and plastics and provides a statutory framework that precludes those articles from being *prima facie* classifiable in both headings 3926 and 6116. Indeed, Section XI, Note 1(h) (applicable to heading 6116) and Chapter 39, Note 2(p) (applicable to heading 3926), make clear that headings 3926 and 6116, HTSUS, are mutually exclusive, and plaintiff agrees. Pl.'s Opp. Br. at 13. *Kalle*, 923 F.3d at 994 (Federal Circuit acknowledged that Note 1(h) of Section XI and Note 2(p) are "mutually exclusionary notes" that precludes an article from being classifiable as both an article of Section XI and under Chapter 39). Finally, the Explanatory Notes to heading 3926, HTSUS, indicate that the heading only covers "other articles of plastics" that are not more specifically described by another HTSUS provision, which is untrue here because the gloves are described by heading 6116. Accordingly, the section notes, chapter notes, and Explanatory

8

Notes support the position that the gloves cannot be *prima facie* classifiable under both headings 3926 and 6116, HTSUS, and an essential character analysis is unwarranted in this case.

Even assuming that a GRI 3(b) essential character analysis is appropriate, which it is not, Magid's gloves would still fall within heading 6116 as knit gloves versus other plastic articles of heading 3926. Magid argues that the Government misconstrues the level of cut resistance each model of glove provides and explains that not every glove at issue has the same level of cut resistance. *Id.* at 6. Magid points to model PU50 as an example of a glove that does not have a cut resistance level. The Government is well aware that all of the gloves at issue do not have the same characteristics. However, as we established in our moving brief, Magid's testimony regarding its gloves concerning the structure and cut resistance imparted by the knit shell, along with Magid's marketing materials, and samples of the gloves unequivocally demonstrate that the knit shell gives the gloves their essential character. Def.'s Br. at 17-20. The knit shells also provide comfort, breathability, and abrasion resistance. The knit shell is the largest portion of the glove and it is the material that provides the structure of the glove. *See* Samples. In fact, the knit shell is a textile glove. The textile fibers are over 50% by weight. Def.'s Ex. 4. The polyurethane coatings on the palms of the gloves enhance or merely add to the flexibility, dexterity and grip provided by the knit shells (gloves). "[T]he coating itself doesn't have cut resistance." *See* Def.'s Ex. 1, Cohen Dep. Tr. at 58:24-59:8. Because the knit shell (gloves) imparts the essential character, the gloves at issue are properly classifiable in heading 6116.

**IV.   GRI 6 DICTATES THAT THE GLOVES AT ISSUE ARE PROPERLY CLASSIFIABLE UNDER SUBHEADING 6116.10.55, HTSUS.**

Once the proper heading for the gloves at issue has been determined, GRI 6 is applied to determine the proper subheading. *ADC Telecommunications, Inc. v. United States*, 916 F.3d 1013, 1018 (Fed. Cir. 2019). GRI 6 provides:

9

> For legal purposes, the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above [GRIs], on the understanding that only subheadings at the same level are comparable. For the purposes of this Rule the relative Section and Chapter Notes also apply, unless the context otherwise requires.

Here, the proper subheading for the subject gloves is 6116.10.55, HTSUS, which provides for "[g]loves, mittens and mitts, knitted or crocheted: Impregnated, coated or covered with plastics or rubber: . . . Other: Without fourchettes . . .Other: Containing 50 percent or more by weight of cotton, man-made fibers or other textile fibers, or any combination thereof." It is undisputed that the gloves are partially coated in plastics. The gloves also are more than 50 percent by weight of man-made fibers. *See* Samples. *See* Def.'s Ex. 4 Commercial Invoices.

## CONCLUSION

For all the foregoing reasons, we respectfully request that judgment be entered granting the Government's cross motion for summary judgment, finding that the imported merchandise is properly classifiable in subheading 6116.10.55, HTSUS, and denying plaintiff's motion for summary judgment, and dismissing this action.

                                        Respectfully submitted,

                                        BRIAN M. BOYNTON  
                                        Acting Assistant Attorney General

                                        JEANNE E. DAVIDSON  
                                        Director

                                        /s/ Justin R. Miller  
                                        JUSTIN R. MILLER  
                                        Attorney-In-Charge  
                                        International Trade Field Office

By:                         /s/ Aimee Lee  
                                        AIMEE LEE  
                                        Assistant Director

                                        /s/ Marcella Powell

*Of Counsel*:                         MARCELLA POWELL  
                                        Senior Trial Counsel  
Paula S. Smith                      Department of Justice, Civil Division  
 Assistant Chief Counsel           Commercial Litigation Branch  
 Office of the Assistant Chief Counsel  26 Federal Plaza, Room 346  
 International Trade Litigation      New York, New York 10278  
 U.S. Customs and Border Protection  (212) 264-9230 or 1873  
 Attorneys for Defendant

Dated: September 17, 2021

# CERTIFICATE OF COMPLIANCE PURSUANT TO
# USCIT STANDARD CHAMBER PROCEDURE 2(B)

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. TIMOTHY C. STANCEU, JUDGE

_____

|  |  |  |
|---|---|---|
| MAGID GLOVE & SAFETY MANUFACTURING CO. LLC, | : | |
| Plaintiff, | : | Court No. 16-00150 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

_____:

  I, Marcella Powell, trial counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing brief, relying upon the Microsoft Word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 3096 words.

                /s/ Marcella Powell