# United States Court of Appeals for the Federal Circuit

---

**MAGID GLOVE & SAFETY MANUFACTURING CO. LLC,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1793

---

Appeal from the United States Court of International Trade in No. 1:16-cv-00150-TCS, Senior Judge Timothy C. Stanceu.

---

Decided: December 6, 2023

---

LAWRENCE FRIEDMAN, Barnes, Richardson & Colburn, LLP, Chicago, IL, argued for plaintiff-appellant.

MARCELLA POWELL, Commercial Litigation Branch, Civil Division, Department of Justice, New York, NY, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, AIMEE LEE, PATRICIA M. MCCARTHY, JUSTIN REINHART MILLER; PAULA S. SMITH, Office of the Assistant Chief Counsel, United States Bureau of Customs and Border Protection, United States Department of Homeland Security, New York, NY.

---

Before MOORE, *Chief Judge*, REYNA and TARANTO, *Circuit Judges*.

REYNA, *Circuit Judge*.

Magid Glove & Safety Manufacturing Co. LLC ("Magid") appeals a decision of the United States Court of International Trade regarding the tariff classification of certain knit gloves with partial plastic coating. Because we conclude that the gloves are properly classified under heading 6116 of the Harmonized Tariff Schedule of the United States, we affirm.

## HARMONIZED TARIFF SCHEDULE FRAMEWORK

The Harmonized Tariff Schedule of the United States ("HTSUS")[1] governs the classification of imported merchandise. *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1163 (Fed. Cir. 2017). The HTSUS is organized by four-digit headings, and each heading may contain one or more six-digit or eight-digit subheadings. *See Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). The headings set forth general categories of merchandise, while the subheadings provide a more particularized division of the merchandise within each category. *Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). The headings and subheadings are enumerated in Chapters 1 through 99 across various sections of the HTSUS. *See R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014). The HTSUS further contains, among other things, the "General Rules of Interpretation" ("GRIs"), the "Additional United States Rules of Interpretation" ("ARIs"), and various section and chapter notes. *Id.*

---

[1] Because the subject gloves were imported in 2015, the parties cite to HTSUS (2015) (Rev.1). *See, e.g.*, J.A. 286, 291.

The GRIs and ARIs govern the interpretation of the HTSUS provisions to determine proper classification of merchandise. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). The GRIs are applied numerically, such that once proper classification is determined via a particular GRI, the classification inquiry terminates and the remaining successive GRIs become inoperative. *StarKist Co. v. United States*, 29 F.4th 1359, 1361 (Fed. Cir. 2022). According to GRI 1, a court first construes the terms of the heading and any relative section or chapter notes, to determine whether the merchandise at issue is classifiable under that heading. *Orlando Food*, 140 F.3d at 1440. After determining the appropriate heading, the court then proceeds to identify the appropriate subheading. *See id.*; *see also* GRIs 1 & 6,[2] HTSUS.

## BACKGROUND

At issue are eight models of knit textile gloves with partial plastic (polyurethane) coating. The gloves consist of a shell made of man-made fibers that is directly knitted to shape on an industrial knitting machine. *See Magid Glove & Safety Mfg. Co. v. United States*, 567 F. Supp. 3d 1334, 1337 (Ct. Int'l Trade 2022) ("*Decision*"). The complete shell then goes through a dipping process, where the palm and portions of the fingers are coated with polyurethane. *Id.* at 1336. Magid markets these gloves for use in automotive, metal handling, and other industrial and commercial settings. *Id.* at 1337; J.A. 42–53 (product specifications).

The relevant HTSUS headings and subheadings for the classification of these imported gloves are:

> Heading 6116: Gloves, mittens and mitts, knitted or crocheted:

---

[2] Under GRI 6, "the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes[.]" GRI 6, HTSUS.

> Subheading 6116.10.55: Impregnated, coated or covered with plastics or rubber: Other: Without fourchettes: Other: Containing 50 percent or more by weight of cotton, man-made fibers or other textile fibers, or any combination thereof

J.A. 291.

> Heading 3926: Other articles of plastics and articles of other materials of headings 3901 to 3914:
>
> Subheading 3926.20.10: Articles of apparel and clothing accessories (including gloves, mittens and mitts): Gloves, mittens and mitts: Seamless

J.A. 286.

In January 2015, Magid imported into the United States two entries of the subject gloves from China and South Korea. *Decision*, 567 F. Supp. 3d at 1336. The United States Customs and Border Protection ("CBP") classified the gloves under subheading 6116.10.55 of the HTSUS, subject to duty at 13.2% *ad valorem*. *Id.* at 1338. After the CBP liquidated the two entries of gloves, Magid filed a protest, contending that the gloves should have been classified under subheading 3926.20.10, a duty-free provision. *Id.* at 1336, 1338. The CBP denied Magid's protest. *Id.* at 1336.

Magid sued in the United States Court of International Trade ("CIT") challenging the denial of its protest. *See id.* The parties cross moved for summary judgment. *Id.* The CIT determined that the terms of heading 6116, "Gloves . . . knitted or crocheted," more appropriately described the gloves at issue. *See, e.g., id.* at 1340, 1342–43. The CIT explained that the terms of heading 3926 did not describe the subject gloves because, "while comprised in part of a plastic material (polyurethane), the gloves are not 'of plastics' or of other materials of headings 3901 to 3914 (which

pertain to various plastics and similar substances in primary forms)." *Id.* at 1339.

The CIT rejected Magid's contention that Section XI[3] Note 1(h) excluded the subject gloves from heading 6116. *Id.* at 1340–43. Section XI Note 1(h) states that Section XI does not cover "[w]oven, knitted or crocheted fabrics, felt or nonwovens, impregnated, coated, covered or laminated with plastics, or articles thereof, of chapter 39 [('Plastics and Articles Thereof')]." J.A. 287. According to the CIT, the "express terms" of this note would exclude the gloves from heading 6116 "only if they are 'articles' *of*" knitted fabrics "impregnated, coated, covered or laminated" with plastics, and "only if those fabrics are classified within" Chapter 39. *Decision*, 567 F. Supp. 3d at 1340.

The CIT concluded that the gloves were not of such fabrics. *Id.* at 1342–43. In reaching that conclusion, the CIT examined provisions in Chapter 39 to determine what "fabrics" this chapter may encompass. *Id.* at 1341. The CIT found heading 3921 pertinent because it covered "some plastic sheet or film products that have a textile component and could be described as 'fabrics.'" *Id.* The CIT next consulted relative notes, including the limitation imposed by Chapter 39 Note 10[4] on the scope of such Chapter 39

---

[3]   Section XI ("Textiles and Textile Articles") covers, among other chapters, Chapter 61 ("Articles of Apparel and Clothing Accessories, Knitted or Crocheted") and the headings within Chapter 61, including heading 6116.

[4]   Chapter 39 Note 10 provides,

> In headings 3920 and 3921, the expression "<u>plates, sheets, film, foil and strip</u>" applies only to plates, sheets, film, foil and strip (other than those of chapter 54) and to blocks of regular geometric shape, whether or not printed or otherwise surface-worked,

"fabrics." *Id.* at 1342. Under Chapter 39 Note 10, the CIT explained, to fall within Chapter 39, "the knitted fabrics must be in uncut or basic rectangular form and thus cannot be in more complex shapes." *Id.*

Accordingly, the CIT determined that in order to be considered fabrics of Chapter 39, as required by Section XI Note 1(h), the fabrics must not only be "impregnated, coated, covered or laminated with plastics," but they must also be "in basic uncut or rectangular form." *Id.* (internal quotations omitted). Because the textile component of the gloves "is complete when it comes off the [knitting] machine," the CIT held that the gloves were not "of" fabrics encompassed by Chapter 39. *Id.* at 1342–43 (citation and internal quotations omitted; alteration in original). The CIT thus determined that Magid's gloves were not excluded from heading 6116 by Section XI Note 1(h). *Id.* at 1343.

After concluding that heading 6116 was the appropriate heading, the CIT then applied GRI 6 to arrive at subheading 6116.10.55 for the classification of the subject gloves. *Id.* at 1343–44. The CIT accordingly upheld the CBP's classification and granted summary judgment in the government's favor. *Id.* at 1344.

Magid timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

STANDARD OF REVIEW

We review *de novo* the CIT's grant of summary judgment and apply anew the standard used by the CIT to assess the subject classification. *Otter Prods., LLC v. United*

---

> uncut or cut into rectangles (including squares) but not further worked (even if when so cut they become articles ready for use).

J.A. 283.

*States*, 834 F.3d 1369, 1374–75 (Fed. Cir. 2016). Despite our *de novo* review, we begin our analysis with the CIT's opinion, which "is nearly always the starting point of our analysis." *Schlumberger*, 845 F.3d at 1162 (quoting *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1341 (Fed. Cir. 2016)).

Proper classification of merchandise under the HTSUS requires a two-step process. First, we ascertain, without deference, the meaning of the specific terms within the relevant provisions. *Orlando*, 140 F.3d at 1439. Second, we determine whether the merchandise at issue falls within the description of those terms as properly interpreted. *Id.* This second step presents a factual inquiry that we review for clear error. *Id.* Where, as here, there is no factual dispute regarding the nature, structure, and use of the merchandise, the proper classification turns on the first step. *Faus Grp., Inc. v. United States*, 581 F.3d 1369, 1372 (Fed. Cir. 2009).

## DISCUSSION

On appeal, Magid challenges the CIT's classification of the subject gloves under heading 6116.[5] Appellant Br. 2–3. To support its proposed alternative heading 3926, Magid relies on Section XI Note 1(h) and contends that this note excludes the gloves from heading 6116. *Id.* at 16–18; Reply Br. 13–14. According to Magid, the CIT's interpretation of this note was erroneous because it failed to apply the reasoning in *Kalle USA, Inc. v. United States*, 923 F.3d 991 (Fed. Cir. 2019). Appellant Br. 11; Reply Br. 1. We disagree with Magid's arguments. For reasons discussed below, we conclude that the subject gloves were appropriately classified under heading 6116.

---

[5] Magid does not separately challenge classification under the relevant subheading.

### A. Knitted Gloves

To determine the tariff classification of merchandise, GRI 1 instructs us to consider first the "*terms of the headings*" and any relative section or chapter notes. GRI 1, HTSUS (emphasis added). As part of the legal text of the HTSUS, section and chapter notes have the force of statutory law. *See BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011). Unlike section and chapter notes, the Explanatory Notes[6] are not legally binding, but they "may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions." *Id.*

Absent contrary legislative intent, we construe HTSUS terms based on their common and commercial meanings, which we presume to be the same. *Carl Zeiss*, 195 F.3d at 1379. And when determining which heading is more appropriate for classification, "a court should compare only the language of the headings and not the language of the subheadings." *Orlando Food*, 140 F.3d at 1440; *see also Schlumberger*, 845 F.3d at 1163 (noting that subheadings "cannot be used to expand the scope of their respective headings" (internal quotations omitted)).

The subject gloves involve two competing headings: (1) heading 3926: "Other articles of plastics and articles of other materials of headings 3901 to 3914"; and (2) heading 6116: "Gloves, mittens and mitts, knitted or crocheted." J.A. 286; J.A. 291. Of the two, we conclude that heading 6116 is the appropriate heading.

---

[6] The Explanatory Notes are published by the World Customs Organization ("WCO"). *See Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 644 n.2 (Fed. Cir. 2013). They represent the WCO's official interpretation of the Harmonized Commodity Description and Coding System, the global system on which the HTSUS is based. *Id.*

Heading 6116 plainly describes "[g]loves . . . knitted." J.A. 291. Magid does not seem to dispute that its imported products are "gloves" and that they are "knitted." *See* Appellant Br. 18. Magid also markets these products as "work glove[s]" and describes the construction of these products as "machine knit[ted]." *See* J.A. 42–53 (product specifications listing the products as "work glove[s]" and "machine knit"). So, the record shows that these "gloves" are machine "knitted," as heading 6116 describes. Heading 3926, in contrast, recites "articles of plastics," and the term "gloves" only appears in the terms of *subheading* 3926.20. J.A. 286. But a proper classification analysis starts with the terms of the headings, not the subheadings. *See Orlando Food*, 140 F.3d at 1440. In addition, a subheading cannot expand the plain meaning of the terms of a heading. *See Schlumberger*, 845 F.3d at 1163. Here, as the CIT noted, while the exterior of the gloves has a partial plastic coating, the gloves are not "of plastics," as heading 3926 recites. *See Decision*, 567 F. Supp. 3d at 1339. The terms of heading 3926 therefore do not describe the subject gloves.

The Explanatory Note to heading 6116 supports this interpretation. *See* J.A. 317. This note establishes that heading 6116 contemplates and covers knitted gloves with a non-knit component, whether in the shell or as covering. *See id.* Following a listing of several subheadings, the explanatory remarks of the note states that heading 6116 "covers all knitted or crocheted gloves," whether for males or females, short or long, and it further covers certain gloves in "unfinished" form.[7] *Id.* While the remarks provide that certain gloves with a fur component are excluded from heading 6116, they do not similarly exclude gloves with a partial plastic coating. *See id.* As the CIT explained, this

---

[7] Before the explanatory remarks, the note lists: 6116.10 ("Impregnated, coated or covered with plastics or rubber, Other:"), 6116.91 ("Of wool or fine animal hair"), 6116.92 ("Of cotton"), 6116.93 ("Of synthetic fibres"), and 6116.99 ("Of other textile materials"). *See* J.A. 317.

note thus evidences the legislative intent that the terms of heading 6116 "include[] as a general matter those [gloves] to which a non-knitted component, such as a plastic layer, has been affixed." *Decision*, 567 F. Supp. 3d at 1340.

Contrary to Magid's contention, Section XI Note 1(h) does not exclude the subject gloves from Section XI and hence heading 6116. Under Section XI Note 1(h), Section XI does not cover "[w]oven, knitted or crocheted fabrics, felt or nonwovens, impregnated, coated, covered or laminated with plastics, or articles thereof, of chapter 39." J.A. 287. That is, if the "fabrics" and "articles thereof" fall within Section XI Note 1(h), they would be excluded from Section XI by the operation of this note.

To ascertain the scope of such "fabrics" and "articles thereof" covered by this note, we begin with the plain language of Section XI Note 1(h). This note sets forth several qualifiers that collectively describe and limit the expression "fabrics." *Id.* The first two qualifiers are not in dispute: the "fabrics" must be "[w]oven, knitted or crocheted," and they must also be "impregnated, coated, covered or laminated with plastics." *Id.* The ending segment of the note, however, adds another qualifier which requires the "fabrics" be "of [C]hapter 39." *Id.* We therefore must, as the CIT did, look to Chapter 39 and locate pertinent provisions that may shed light on what "fabrics" Chapter 39 encompasses. This inquiry takes us to heading 3921 because this heading contemplates "Other plates, sheets, film, foil and strip, of plastics" combined with "textile materials" or "textile components." *See, e.g.*, subheading 3921.13 (covering items "[c]ombined with textile materials: Products with textile components . . ."); subheading 3921.90 (covering items "[c]ombined with textile materials . . ."). *Compare* heading 3921 (covering "[o]ther plates, sheets, film, foil and strip, of plastics"), *with* heading 3920 (covering "[o]ther plates, sheets, film, foil and strip, of plastics" that are "*not . . . combined with other materials*" (emphasis added)).

And as instructed by GRI 1, we then consider pertinent notes that inform or limit the scope of heading 3921 and

the items it covers.  *See* GRI 1, HTSUS.  In this regard, we must give effect to the express limitation set forth in Chapter 39 Note 10, which states that the expression "plates, sheets, film, foil and strip" of heading 3921 "applies only to" those that are "uncut or cut into rectangles (including squares) but not further worked (even if when so cut they become articles ready for use)."  J.A. 283.  That is, the "fabrics" or textile materials heading 3921 may encompass must be "uncut or cut into rectangles (including squares) but not further worked."  *Id.*

Taking the above into account, we agree with the CIT's conclusion that to fall within Section XI Note 1(h), the "fabrics" not only must be "impregnated, coated, covered or laminated with plastics," they must also be "in basic uncut or rectangular form."  *Decision*, 567 F. Supp. 3d at 1342.  The textile fabrics of the subject gloves are undisputedly not so, because they are in the advanced form of complete gloves when they come off the knitting machine.  J.A. 58 (Magid representative testifying that "[t]he entire glove, finished glove, comes out of the knitting machine" and then goes through a dipping process).  As the CIT explained, because the textile fabrics of the gloves are knitted "directly from yarn [in]to an advanced shape," these gloves are not "of" a Chapter 39 fabric.[8]  *Decision*, 567 F. Supp. 3d at 1342–43.  The exclusion of Section XI Note 1(h) therefore does not apply to the subject gloves.

### B. *Kalle* and "Completely Embedded"

Magid contends that the CIT erred in interpreting Section XI Note 1(h) by failing to follow *Kalle* to determine whether the gloves are "completely embedded" in plastics and therefore "excluded from HTSUS Section XI if the gloves are classifiable in Chapter 39."  Reply Br. 1–2 (citing

---

[8]  On reply, Magid clarified its arguments and conceded that "[f]or the exclusion [in Section XI Note 1(h)] to apply, the Note also requires that the fabric or article be classifiable in Chapter 39."  Reply Br. 2.

*Kalle*, 923 F.3d 991); *see also* Appellant Br. 11–16. In Magid's view, *Kalle* controls "the application of Section XI[] Note 1(h)" and requires an analysis of the subject gloves under the "completely embedded" test applied in that case. Reply Br. 1. We are not persuaded by these arguments.

*Kalle* involved the interpretation of the term "completely embedded in plastics," which appears in Chapter 59 Note 2(a)(3)[9] and addresses coverage and exclusions under heading 5903. *Kalle*, 923 F.3d at 994. The merchandise at issue in *Kalle* were certain sausage casings "comprised of a woven textile sheet that is coated with a layer of plastic on one side." *Id.* at 993. The importer contended that the casings should be classified under heading 3917 as plastics subject to a lower duty rate, rather than under heading 6307 as made-up textiles.[10] *Id.* On appeal, the parties agreed that the interpretation of the term "completely

---

[9] Chapter 59 Note 2(a)(3) provides that,

> Heading 59.03 applies to: (a) Textile fabrics, impregnated, coated, covered or laminated with plastics, whatever the weight per square metre and whatever the nature of the plastic material (compact or cellular), other than: . . . (3) Products in which the textile fabric is either completely embedded in plastics or entirely coated or covered on both sides with such material, provided that such coating or covering can be seen with the naked eye with no account being taken of any resulting change of colour (Chapter 39).

J.A. 318.

[10] The two competing headings in *Kalle* were: heading 3917, which covers "[t]ubes, pipes and hoses and fittings therefor (for example, joints, elbows, flanges), of plastics;" and heading 6307, which covers "[o]ther made up articles, including dress patterns." *Kalle*, 923 F.3d at 993.

embedded in plastics" as used in Chapter 59 Note 2(a)(3) was determinative. *Id.* at 994. This court then interpreted the "completely embedded" language and affirmed the CIT's classification. *Id.* at 995–97.

*Kalle*'s "completely embedded" test does not apply to the classification here. None of *Kalle*'s competing headings, HTSUS chapters, or merchandise, are involved here. The term "completely embedded" does not appear in Section XI Note 1(h) or the two competing headings in this case. Magid concedes that the text of Chapter 59 Note 2(a)(3) "specifies that th[is] Note applies to Heading 5903," not to the headings at issue here. Reply Br. 13. We reject Magid's attempt to take the interpretation of a term within Chapter 59 Note 2(a)(3) out of context and apply it in a case involving different provisions and merchandise.[11]

\* \* \*

Magid's proffered classification approach departs from GRI 1's instruction to start a proper classification analysis by focusing on the language of the headings. The partial plastic coating does not, as Magid contends, remove the gloves from heading 6116 and make them classifiable under Chapter 39 as articles of plastics. Further, Magid's approach would effectively eviscerate the subheadings under heading 6116 where the HTSUS drafters specifically address the very merchandise Magid imported. *See* J.A. 291 (subheading 6116.10 covering knitted gloves

---

[11] Notably, Magid relies on *Kalle* for its appeal, but it simultaneously requests that this court reconsider *Kalle* en banc and overrule that case. Reply Br. 11–16; *id.* at 11 (Magid contending that *Kalle*'s "use of Chapter 59[] Note 2 to determine the scope of headings within Chapter 61 appears to be inconsistent with the instruction in [GRI 1]"). We find *Kalle* inapplicable for the classification at issue and decline to reach the merits of Magid's en banc request.

"[i]mpregnated, coated or covered with plastics or rubber"). We reject such an approach.

Accordingly, we conclude that the subject gloves are properly classified as "Gloves . . . knitted" under heading 6116.

## CONCLUSION

Based on the foregoing, we hold that the CIT correctly classified Magid's imported gloves under heading 6116. We have considered Magid's remaining arguments and find them unpersuasive. Accordingly, the CIT's judgment is affirmed.

**AFFIRMED**

## COSTS

No costs.